**Brenda CLINTON, Plaintiff,**

v.

**John S. NAGY et al., Defendants.**

No. C 74–994.

United States District Court,
N. D. Ohio, E. D.

Nov. 14, 1974.

Rita P. Reuss and Charles E. Guerrier, Cleveland, Ohio, for plaintiff.

Richard B. Mills, Asst. Law Director, Cleveland, Ohio, for defendants.

LAMBROS, District Judge.

Plaintiff, Brenda Clinton, brought this action, through her mother and next friend Johnnie Clinton, seeking the issuance of a temporary restraining order and a preliminary and permanent injunction against defendants John S. Nagy, Commissioner of the Division of Recreation of the City of

Cleveland; Robert Maver, Director of the Cleveland Browns Muny Football Association; Charles Hall, Director of Class "F" Muny League teams; and Ralph J. Perk, Mayor of the City of Cleveland. Plaintiff filed the action pursuant to 42 U.S.C. § 1983 and seeks to enjoin defendants from depriving her of equal recreational opportunities because of her sex and a declaratory judgment that the policies, customs, and practices of the defendants are in violation of the Constitution and laws of the United States. Notice of a hearing on the motion for temporary relief was afforded defendants, and this matter was heard on Friday, November 1, 1974. The Court granted plaintiff's motion for the temporary restraining order. The Court's ruling therein is set forth with more particularity below.

Plaintiff's claim is that she is a twelve year old female who expressed her interest to her mother and to Mr. William Thomas, coach of the 97th Street Bulldogs football team, in September, 1974, of her desire to play football with Mr. Thomas' team.

The 97th Street Bulldogs football team is licensed by the City as part of the Cleveland Browns Muny Football Association. Plaintiff alleges that neither her mother nor Coach Thomas have any objections to plaintiff's participation on the team. Affidavits of Mrs. Clinton and Mr. Thomas support her allegations. Mrs. Clinton testified by affidavit that on September 28, 1974, she signed a Medical Service Agreement, which is required of all Muny league players, in order that her daughter Brenda could participate in league play. It appears that the other requirements of the Cleveland Browns Muny Football Association were met by the plaintiff, and that on September 28, 1974 plaintiff was suited and prepared to play with the 97th Street Bulldogs. On that date, and on several subsequent Satur-

day afternoons, plaintiff was suited and ready to play but was informed by defendant Charles Hall that she would not be permitted to play because she was a female. At defendant Maver's request, Mrs. Clinton then signed a waiver, not required of males who participated in the Association's program, absolving the City and its agents from liability for any injuries which plaintiff might receive. Mrs. Clinton signed this waiver upon the representation of an employee of the Division of Recreation and a letter from Robert Maver that if the special waiver was signed, plaintiff would be able to play football with the team on October 19, 1974. However, on October 18, 1974, Mrs. Clinton was notified that although the waiver had been received, Brenda could not play because that "was the law."

Plaintiff, therefore, instituted this suit seeking an order to restrain the defendants from denying her an opportunity to qualify to participate as a member of the 97th Street Bulldogs in the last games of the Season, on Saturday, November 2, 1974 and Saturday, November 9, 1974, solely on the basis of her sex. At the hearing on the temporary restraining order, the defendants, through counsel, did not dispute that the reason that plaintiff was not permitted to play with the Bulldogs was because of her sex. The defendants argued, however, that the City's rules and regulations which govern the playing of sports specifically exclude females from participating in contact sports [1] and that such exclusion is lawful because it bears a rational relationship to a legitimate state purpose of providing for the safety and welfare of females.

Accordingly, the sole issue before this Court at the hearing on the motion for a temporary restraining order was whether plaintiff had shown a substantial likelihood of success on the merits of her claim that

---

1. Defendants' Exhibits 1 and 3, received as joint exhibits, were a letter from the Director of Secondary Schools classifying certain sports, including football, as contact sports and the Constitution and Rules of the Ohio High School Athletic Association 1974–75. Defendants stated that Section 2, of the High School Rules which provides that: "Boys teams must be composed of boys only, in all contact sports." has been adopted by the Division of Recreation and governs Muny league play.

the defendants should be enjoined from enforcing the City's regulations which exclude females from the opportunity to qualify for participation in Muny league football, a contact sport, because such regulations do not bear a reasonable relationship to any legitimate state purpose. *Morris v. Michigan State Board of Education*, 472 F.2d 1207 (6th Cir. 1973). In this regard, defendants urged that the exclusion of females from contact sports was necessary for their safety and welfare and asserted that the testimony of its medical experts at the hearing on the merits would establish that the rule adopted by the Cleveland Division of Recreation is rationally related to that purpose. Defendants contended that their experts would testify that even at age ten, eleven, or twelve, boys are beginning to develop speed and greater physical stamina at a faster pace than are girls of those ages. It appears to the Court that the expected testimony which defendant indicated would defeat plaintiff's motion for a temporary restraining order was based upon the alleged naturally heavier musculature and generally greater speed of males between the ages of eight to twelve.

Although the defendants stated, moreover, that the testimony of two medical experts would show that based upon a statistical analysis of variable strengths, males were generally stronger than females, the present action was not brought as a class action seeking to enjoin defendants from refusing to allow all females to play football. This action was brought by one named-plaintiff who alleges that she has a right to pursue the opportunity to *qualify* to play football with the Muny leagues. There was no indication that defendants planned to assert at the hearing on the preliminary injunction that Miss Clinton does not meet those standards required of the other members of the 97th Street Bulldogs, except for the fact that she is a female. Nor did it appear that defendants planned to

offer testimony from which this Court could arguably draw an inference that physical trauma will in every case have more of an impact on girls than boys or that girls are always more susceptible to disease as a result of physical trauma.

The plaintiff has cited several recent cases in which courts have struck down school regulations which bar females from participating in school athletics solely on the basis of their sex.[2] Defendants argued, however, that all of those cases have involved the question of whether the school or athletic board had a legitimate state purpose in denying women an equal opportunity to qualify for *non-contact* sports, and the defendants cite a recent Sixth Circuit case for the proposition that although a temporary restraining order was properly granted against the defendants from enforcing a school regulation barring women athletes from participating in non-contact sports, the issuance of a temporary restraining order against the enforcement of a regulation excluding women from contact sports would be improper since that regulation would bear a reasonable relationship to a legitimate state purpose. *Morris v. Michigan State Board of Education*, 472 F.2d 1207 (1973). This Court is unable to agree with the defendants' interpretation of the *Morris* case in this regard.

In *Morris*, two high school girls sought injunctive relief against the enforcement of a regulation of the Michigan High School Athletic Association which prohibited them from participating on their school's interscholastic tennis team. The district court issued a temporary restraining order against the defendants, and thereafter, as the Court of Appeals noted, the scope of the pleadings was expanded to include as a class, all girls in Michigan high schools who wanted to participate in interscholastic non-contact sports. The district court judge subsequently issued a preliminary injunction in which he enjoined the defendants

---

**2.** For an excellent survey of the cases and authorities on the question of discrimination against women in interscholastic sport activi-

ties see *Brenden v. Independent School District 742*, 477 F.2d 1292 (8th Cir. 1973).

from preventing or obstructing females from full participation in interscholastic athletics and athletic contests solely because of their sex. On appeal, the Sixth Circuit noted that the district court failed to limit his injunctive order to non-contact sports. The Sixth Circuit remanded the case to the district court for modification of the injunctive order to limit its scope to non-contact sports, not because the record supported a finding that the state had a legitimate state purpose in excluding females from contact sports, but rather because there was no case or controversy before the district court in that action regarding the constitutionality of such an exclusion.

The Sixth Circuit in *Morris* did, however, state with regard to the non-contact exclusion that where a regulation is based upon a classification by sex, that "classification is subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment to ascertain whether there is a rational relationship to a valid state purpose." 472 F.2d at page 1209. And, despite the fact that the application of this test in the case was limited to non-contact sports in the pleadings, it would appear that this is the appropriate test to be applied in the instant case in which the regulation pertains to a contact sport.

In evaluating the plaintiff's motion for the issuance of a temporary restraining order herein the Court concludes that plaintiff has shown a substantial likelihood of success of the merits of her claim that defendants have precluded her from participating in the Muny League football games because she is a female, and solely because she is a female. Defendants have offered no evidence, nor did defendants indicate that they would present evidence to this Court that Miss Clinton does not possess the qualifications and physical ability required of male members to participate in the league's games. The defendants offered no argument nor did they put forward a factual basis on which this Court could conclude that Miss Brenda Clinton is more suscepti-

ble to injury than are the other "Bulldogs." In addition, in response to the Court's inquiry, defendants stated that equipment is issued to every qualified member of the Muny league teams. That equipment includes shoulder pads, face guards, helmets and mouth pieces. The Court is satisfied, without an indication of expected testimony to the contrary, that those safeguards deemed adequate to protect the male members of the team will be similarly adequate protection for Brenda Clinton.

Defendants argued, however, that even if Brenda were qualified to play as a "Bulldog" the temporary restraining order should not issue because she had made no showing that she would suffer irreparable harm if she were not permitted to play with that team. The Court is unable to concur in defendants' assertion.

Of course, females have not engaged in traditionally male sports, and as a result, in many instances females lack the requisite training to qualify for membership on all-male teams, particularly those teams established for the playing of "contact" sports. Perhaps those who find merit in the more traditional male-female roles may have great difficulty in understanding how a young girl will suffer irreparable harm if she is precluded from engaging in the rough and sometimes even brutal contest of football. Many adults, no doubt, may feel that young girls will in fact suffer great harm, both physically and socially, if they are permitted to participate in "boys'" games. However, football is by its very nature a physically dangerous game, and the threat of injuries to young boys has alarmed many parents in the community for years.

Nevertheless, organized contact sports such as football continue to be played, and those individuals who encourage young men to participate in these sports seem to do so with a sincere belief that although the game is potentially dangerous, the rewards which will be reaped from participation in the game offset the potential dangers. Organized contact sports have generally been

thought of as an opportunity and means for a young boy to develop strength of character, leadership qualities and to provide competitive situations through which he will better learn to cope with the demands of the future. Yet, although these are presumably qualities to which we desire all of the young to aspire, the opportunity to qualify to engage in sports activities through which such qualities may be developed has been granted to one class of the young and summarily denied to the other.

It is necessary that we begin to focus on the individual rather than thinking in broad generalities, which have oftentimes resulted in the imposition of irrational barriers, against one class or another. The issue before this Court is whether one young person, Brenda Clinton, who apparently qualifies to play with the 97th Street Bulldogs in every respect except for her sex, should be given the opportunity to participate in the game of football and to develop strength and character in that way in which she, with her mother's approval, believes will be the most valuable to her. The Court concluded that to deprive a qualified twelve year old girl of an opportunity to engage in that activity would cause her to suffer irreparable harm, particularly in light of the fact that there are only two remaining games this season, on November 2, 1974 and November 9, 1974.

The motion for the temporary restraining order is granted. Accordingly, the defendants, their agents, employees, and all persons having actual knowledge of this order are hereby enjoined from prohibiting plaintiff Brenda Clinton from participating as a member of the 97th Street Bulldogs in its football games solely because of her sex. As this Court has already cautioned plaintiff, nothing in this order should be construed as requiring Coach Thomas to put Brenda Clinton into a game, should he determine that she does not qualify on the day of a game or should he deem another member of the team to be better suited to play in the position for which Miss Clinton has qualified.

This matter is set down for a hearing on plaintiff's motion for a preliminary injunction, to be consolidated with a hearing on the merits of her claim for permanent injunctive and declaratory relief on November 26, 1974, at 1:30.

IT IS SO ORDERED.