CHEESEMAN v AMERICAN MULTI-CINEMA, INC

Docket No. 49420. Submitted February 5, 1981, at Lansing.—Decided August 5, 1981. Leave to appeal applied for.

Linda Cheeseman, as guardian of the estates of Bridget E. Cheeseman, Amaryllis M. Cheeseman, Collette Cheeseman, and William B. Cheeseman, and Scott Hamilton and Richard Hamilton, by their next friend, brought an action in Ingham Circuit Court against defendant, American Multi-Cinema, Inc., alleging age discrimination under the Michigan Civil Rights Act. The action arose out of defendant's refusal to allow the four minor Cheeseman plaintiffs to attend a showing of an "R" rated motion picture at defendant's theater without a parent or adult guardian accompanying them. The plaintiffs Hamilton, also minors, had been ejected from a showing of the same movie at the same theater one week earlier when it was discovered that they were unaccompanied by a parent or guardian. Plaintiffs demanded an injunction enjoining defendant and its agents from denying the minor plaintiffs admittance to its theaters on the basis of age. Defendant filed an answer and a motion for summary judgment, to which plaintiffs filed an answer and then also moved for summary judgment. The trial court granted defendant's motion for summary judgment, denied plaintiffs' motion for summary judgment and awarded attorney fees to defendant, James T. Kallman, J. Plaintiffs appeal. *Held:*

1. Under the Michigan Civil Rights Act, theaters have a right to treat children differently than adults and may deny admission to "R" rated movies to minors unaccompanied by a parent or legal guardian even though consent is given by the parent or legal guardian. What might otherwise be unlawful age discrimination is permitted by the act where, as here, it is designed for the protection of children.

2. There is no basis in the statute or the court rules for

REFERENCES FOR POINTS IN HEADNOTES

[1, 5-8] 4 Am Jur 2d, Amusements and Exhibitions § 7.
[2, 7, 8] 15 Am Jur 2d, Civil Rights §§ 32, 59.
[3] 4 Am Jur 2d, Amusements and Exhibitions §§ 70-72.
[4] 4 Am Jur 2d, Amusements and Exhibitions § 65.
[5] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity § 11.
[9] [No reference]

awarding attorney fees to defendant. The award of attorney fees to defendant is set aside.

Affirmed in part and reversed in part.

· R. M. MAHER, J., concurred in the result only.

1. THEATERS AND SHOWS — "R" RATED MOVIES — MINORS — STATUTES.

   The Michigan Civil Rights Act allows a theater to deny admission to view "R" rated movies to minors unaccompanied by their parent or legal guardian even though the parent or guardian has consented to the admission (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.).*

2. WORDS AND PHRASES — "LAW" — CIVIL RIGHTS ACT — STATUTES.

   The term "law" as used in the phrase "except where permitted by law" in the Michigan Civil Rights Act was intended by the Legislature to mean the common law and the constitutional law as well as the statutory law (MCL 37.2302; MSA 3.548[302]).

3. THEATERS AND SHOWS — FORESEEABLE INJURIES — COMMON LAW.

   Owners of movie theaters are liable, under the common law, for foreseeable injuries to their patrons.

4. COMMON LAW — OWNERS OF PREMISES — MINORS — DUTY OF DUE CARE.

   An owner who invites a minor onto his premises has a common-law duty of due care which must take into account the immaturity and inexperience of the minor.

5. OBSCENITY — SEXUALLY EXPLICIT MATTER — DISTRIBUTION TO MINORS — STATUTES.

   The statute which prohibits the distribution of "obscene" matter to minors does not apply to the dissemination of sexually explicit matter to a minor by the minor's parent or guardian (MCL 722.671 *et seq.;* MSA 25.254[1] *et seq.).*

6. THEATERS AND SHOWS — MINORS.

   Theaters have a right, under Michigan law, to treat children differently than adults.

7. CIVIL RIGHTS — AGE DISCRIMINATION — MINORS — STATUTES.

   What might otherwise be unlawful age discrimination is permitted by the Michigan Civil Rights Act where the discriminatory action is designed for the protection of children (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.).*

8. THEATERS AND SHOWS — MOVIE RATING SYSTEM — MINORS.

   Use of the movie rating system to deny admission to unescorted

children is permitted by law; it is not unlawful age discrimination.

9. CIVIL RIGHTS — CIVIL RIGHTS ACT — ATTORNEY FEES — STATUTES.
   There is no provision in the Michigan Civil Rights Act for awarding attorney fees to a defendant (MCL 37.2802; MSA 3.548[802]).

*Kenneth Laing,* for plaintiffs.

*Butzel, Long, Gust, Klein & Van Zile* (by *Philip J. Kessler* and *Dennis B. Schultz) (Barbara Scott* and *William Nix,* of counsel), for defendant.

Before: DANHOF, C.J., and R. M. MAHER and BEASLEY, JJ.

BEASLEY, J. The six minor plaintiffs, whose ages range from 6 to 15, brought an action against defendant, American Multi-Cinema, Inc., alleging age discrimination under the Michigan Civil Rights Act.[1] The following findings of fact by the trial judge were undisputed by the parties:

"On or about January 16, 1979, the four Cheeseman children who are plaintiffs in this lawsuit were denied admission to the defendant's theater in Meridian Mall where the movie 'Animal House' was showing. Their parents, William B. Cheeseman, Sr., and Linda Cheeseman, had accompanied them to the theater and attempted to purchase tickets for them. Since their parents did not intend to attend the movie with the Cheeseman children, the defendant denied admission to them because they were minors.

"On or about January 7, 1979, Mark Rilling purchased tickets for his two stepchildren, Scott Hamilton and Richard Hamilton, so that these minors might attend the movie 'Animal House' at defendant's theater in the Meridian Mall in Ingham County, Michigan.

[1] MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* which is often referred to as the Elliott-Larsen Civil Rights Act and was enacted in 1976.

Scott Hamilton and Richard Hamilton were admitted to see the movie 'Animal House', but upon the defendant's agents observing that they were not accompanied by an adult, Scott Hamilton and Richard Hamilton were ejected from the theater and not permitted to see the movie 'Animal House'.

"During its exhibition of 'Animal House' at the Meridian Mall theater, the defendant's admission policy was to admit persons under age 18 to see the film only if accompanied into the theater by a parent or an adult guardian. Defendant would have permitted the minors to see the movie 'Animal House' had they been accompanied by a parent or an adult guardian.

"There is no dispute as to these facts. The defendant refused six unchaperoned children, ages 6-15, inclusive, admission to sit through the film 'Animal House'. This is an 'R' rated film." (Citations omitted.)

Plaintiffs demanded an injunction enjoining defendant and its agents from denying the minor plaintiffs admittance to its theaters on the basis of age. In response to the complaint, defendant filed an answer and a motion for summary judgment. Prior to the hearing on defendant's motion, plaintiffs filed an answer to the motion and also moved for summary judgment.

After a hearing on the motions, the trial court issued a written opinion and entered an order granting summary judgment to defendant, denying plaintiffs' cross-motion, and awarding attorney fees to defendant. Plaintiffs appeal as of right.

On appeal, we hold that defendant theater may deny admission to these six children to view the "R" rated movie "Animal House" when unaccompanied by a parent or legal guardian, even though consent was given by a parent or legal guardian, by virtue of the "except where permitted by law" exception in the statute.

Plaintiffs' claim for relief rests entirely upon the

Michigan Civil Rights Act. No constitutional issue is raised or involved. Section 102 of the statute provides:

"The opportunity to obtain employment, housing and other real estate, to refuse polygraph, psychological stress evaluation, or similar tests in employment situations, and the full and *equal utilization of public accommodations,* public service, and educational facilities without discrimination because of religion, race, color, national origin, *age,* sex, height, weight, or marital status as prohibited by this act is recognized and declared to be a civil right." (Emphasis added.) MCL 37.2102; MSA 3.548(102).

Section 301 defines the term "place of public accommodation" as follows:

"(a) 'Place of public accommodation' means a business, or an educational, refreshment, *entertainment,* recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." (Emphasis added.) MCL 37.2301(a); MSA 3.548(301)(a).

Section 302 provides:

*"Except where permitted by law,* a person shall not:
"(a) Deny an individual the *full and equal enjoyment* of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." (Emphasis added.) MCL 37.2302; MSA 3.548(302).

Thus, this civil rights legislation has a two-sided thrust. One relates to certain defined activities which are declared to be civil rights possessed by

each of us. Relevant here is the civil right to be free from discrimination based on age, except where permitted by law.

The other side of the statute relates to limitations placed on each of us. A person is prohibited from *denying* to anyone full and equal enjoyment of the facilities of a place of public accommodation because of age, *except where permitted by law.*

The latter emphasized portion is clear indication of the intent of the Legislature to retain and apply a practical rule of reason to the prohibition against discrimination on the basis of age. Otherwise, literal application of the prohibition against age discrimination would outlaw many regulations, rules, laws and policies designed to protect children. We believe it is clear that, by adding the words "except where permitted by law", the Legislature intended, among other things, to retain age discrimnation as a protection to children.

In ascertaining and giving effect to the intention of the Legislature, we follow the teleological approach adopted in *People v McFarlin.*[2] as in *Salas v Clements,*[3] we seek a construction of the statute that will avoid an absurd result.

In interpreting the words "except where permitted by law", we do not believe the Legislature intended to mean only "statutory law". If the Legislature had so intended, it could easily have so indicated. Rather, the Legislature intended "law" to mean the common law and the constitutional law in addition to statutory law. The cases support this conclusion. For example, in *Dauer v Zabel,*[4] we said:

---

[2] 389 Mich 557, 564-565; 208 NW2d 504 (1973).

[3] 399 Mich 103; 247 NW2d 889 (1976).

[4] 9 Mich App 176, 180; 156 NW2d 34 (1967), quoting 52 CJS, Law, p 1025, now 52A CJS, Law, p 739.

" 'The law of a state is to be found in its statutory and constitutional enactments as interpreted by its courts and, in the absence of statute law, in the rulings of its courts.' "

The common law forms an essential part of the "law" of this state.[5]

At common law, owners of movie theaters are liable for foreseeable injuries to their patrons.[6] Furthermore, an owner who invites a minor onto his premises has a duty of due care which must take into account the immaturity and inexperience of the minor.[7]

In *Moning v Alfono*,[8] the Court said:

" 'One has no right to demand of a child, or of any other person known to be wanting in ordinary judgment or discretion, a prudence beyond his years or capacity, and therefore in his own conduct, where it may possibly result in injury, a degree of care is required commensurate to the apparent immaturity or imbecility that exposes the other to peril.' "

This recognition by the Court of children's limitations led to its holding that it was reasonable to deny them access to certain dangerous articles (for example, slingshots, in *Moning*). Also, producers and exhibitors of motion pictures have been faced with liability for allowing minors access to sexu-

---

[5] *Myers v Genesee County Auditor*, 375 Mich 1, 7; 133 NW2d 190 (1965), *Beech Grove Investment Co v Civil Rights Comm*, 380 Mich 405, 428; 157 NW2d 213 (1968).

[6] *Earle v Colonial Theatre Co*, 82 Mich App 54; 266 NW2d 466 (1978), *Lane v B & J Theatres, Inc*, 314 Mich 666; 23 NW2d 120 (1946).

[7] See, *Moning v Alfono*, 400 Mich 425; 254 NW2d 759 (1977), *Kreiner v Yezdbick*, 22 Mich App 581; 177 NW2d 629 (1970).

[8] *Moning, supra*, 447-448.

ally explicit or violent films, even where such films were not obscene for minors.[9]

Thus, it can be argued that refusing admission of unescorted children to motion pictures designed for mature audiences is not only "permitted" but may be actually required to avoid civil liability.

The dissimilarity between children and adults has been recognized and used as a basis for restricting children's access to certain materials.[10] in *Ginsberg v New York,*[11] the United States Supreme Court was faced with deciding whether a New York criminal obscenity statute, which prohibited sale to minors under 17 of material defined to be obscene, was constitutional. Defendant had argued that, since the material was not legally obscene for adults, constitutional freedom of expression could not be limited by a statute denying minors under 17 access to such material.

The Supreme Court rejected defendant's claims, finding no invasion by the New York statute of "minors constitutionally protected freedoms", saying, among other things:

"That the State has power to make that adjustment seems clear, for we have recognized that even where there is an invasion of protected freedoms *'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults * * *.'* * * *

"The well-being of its children is of course a subject within the State's constitutional power to regulate, and, in our view, two interests justify the limitations in § 484-h upon the availability of sex material to minors

[9] *National Broadcasting Co, Inc v Niemi,* 434 US 1354; 98 S Ct 705; 54 L Ed 2d 742 (1978), *Olivia N v National Broadcasting Co, Inc,* 74 Cal App 3d 383; 141 Cal Rptr 511 (1977).

[10] See, *Ginsberg v New York,* 390 US 629, 638; 88 S Ct 1274; 20 L Ed 2d 195 (1968).

[11] *Id.*

under 17, at least if it was rational for the legislature to find that the minors' exposure to such material might be harmful. First of all, constitutional interpretation has consistently recognized *that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society.* "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' * * * The legislature could properly conclude that parents and others, teachers for example, who have this primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility. Indeed, subsection 1(f)(ii) of § 484-h expressly recognizes the parental role in assessing sex-related material harmful to minors according 'to prevailing standards in the adult community as a whole with respect to what is suitable material for minors.' Moreover, the prohibition against sales to minors does not bar parents who so desire from purchasing the magazines for their children.

"The State also has an independent interest in the well-being of its youth. * * *'" (Citations and footnotes omitted; emphasis added.)[12]

Subsequent to *Ginsberg,* Michigan enacted a statute prohibiting the distribution of "obscene" matter to minors, which affords a permitted basis for a type of age discrimination.[13]

Section 5 of this statute provides, in part:

"Sec. 5. (1) A person is guilty of distributing obscene matter to a minor if that person does either of the following:
    "(a) Knowingly disseminates to a minor sexually

---

[12] *Ginsberg, supra,* 638-640.

[13] MCL 722.671 *et seq.;* MSA 25.254(1) *et seq.* The new statute replaced MCL 750.343e; MSA 28.575(5), which also afforded a permitted basis for a type of age discrimination in dealing with the distribution of obscene materials.

explicit visual or verbal material that is harmful to minors.

"(b) Knowingly exhibits to a minor a sexually explicit performance that is harmful to minors.

"(2) A person knowingly disseminates sexually explicit matter to a minor when the person knows both the nature of the matter and the status of the minor to whom the matter is disseminated.

"(3) A person knows the nature of matter if the person either is aware of the character and content of the matter or recklessly disregards circumstances suggesting the character and content of the matter."[14]

This section does not apply to the dissemination of sexually explicit matter to a minor by the minor's parent or guardian.[15] The statute prohibiting the distribution of "obscene" matter to minors includes the following definitions:

"Sec. 4. As used in this act:

"(a) 'Harmful to minors' means sexually explicit matter which meets all of the following criteria:

"(i) Considered as a whole, it appeals to the prurient interest of minors as determined by contemporary local community standards.

"(ii) It is patently offensive to contemporary local community standards of adults as to what is suitable for minors.

"(iii) Considered as a whole, it lacks serious literary, artistic, political, educational, and scientific value for minors.

"(b) 'Local community' means the county in which the matter was disseminated."

We conclude that, under Michigan law, theaters have a right to treat children differently than adults. Under the Michigan Civil Rights Act, what might otherwise be unlawful age discrimination is

---

[14] MCL 722.675; MSA 25.254(5).

[15] MCL 722.676(a); MSA 25.254(6)(a).

permitted by law where, as here, it is designed for the protection of children. Against this background, we give consideration to the film ratings utilized by defendant and now employed by most moving-picture theaters.

Part of the impetus for the movie rating system came from parents who wanted prior information about films that their children might be viewing. It is safe to say that not all parents feel as do the parents and guardians of these plaintiffs about what their children may see and be exposed to. It is not relevant here as to which point of view is in the majority.[16]

But, in fairness to defendant, the rating system instituted by the Motion Picture Association of America around 1968, and for which ratings film makers pay, is in part an effort to meet a public demand for a method by which to discover and decide what their children should not see.[17]

The Classification and Rating Administration of the Motion Picture Association of America classifies movies as "G" (general audiences), "PG" (parental guidance), "R" (restricted, children under 17 must be accompanied by parent or guardian), and "X" (no one under 17 admitted).

A motion picture is rated "R" if it is adult in some significant respects such as theme, nudity, sex, language or violence, but does not contain such an accumulation of brutal or sexually connotative language or of explicit sex or excessive and sadistic violence as to result in an "X" rating.

[16] We would guess the parents and guardians of these plaintiffs are, at this point in time, a distinct minority.

[17] Defendant represents that it is a member of the National Association of Theatre Owners (NATO) and that it abides by the rating system of the film industry, which system is a joint effort of the Motion Picture Association of America, NATO and the International Film Importers and Distributors of America.

The "R" rating is intended to warn parents that a film is adult in content or theme and may contain either nudity, sex, rough sexually connotative language, hard violence or a combination of the same. In Michigan, children under 18 are admitted to "R" films only if they are accompanied into the theater by a parent or adult guardian.

While film makers are not required to have their films rated, many exhibitors around the country will not hire and show an unrated film. Obviously, this system is far from perfect and is not on trial here. However, it is at this time the chief, if not only, national film rating system in operation and, as indicated, it arose from a public clamor for some protection from films that some believed were objectionable.

Defendant says that its admission policy follows these ratings. As indicated, the movie "Animal House" was rated "R". Thus, defendant refused to permit plaintiff children from viewing "Animal House" unless accompanied by a parent or legal guardian.

We do not believe the Legislature intended to prohibit a film exhibitor from using this rating system to preclude unescorted children from viewing "R" rated films. On the contrary, we believe this admission policy for children is a reasonable method of seeking to comply with the juvenile obscenity statute and with the common-law duties imposed on those who make entertainment available to children.

The civil rights of these children, ages 6 through 15, were not violated by prohibiting them from viewing this film except in the company of a parent or guardian. In this connection, the purpose of the rating system is protection of the children. The fact that the parents and guardians

of these particular children have a different point of view is not relevant to whether or not there is a violation of the civil rights statute. We hold that defendant's actions here come within the exception, *i.e.,* use of the rating system to deny admission to unescorted children is permitted by law. It is not an unlawful age discrimination.

In so holding, we point out again that there is no constitutional issue asserted here, and we agree that no constitutional issue is present. Our decision rests upon interpetation of the statute and ascertaining the legislative intention.

Plaintiffs' interpretation of the statute would seem to grant children unfettered and uncontrolled access to the adult world in a way which the Legislature did not intend. We should avoid construing the statute in a way that would produce absurd and undesirable results. In prohibiting age discrimination, the act contemplates only that "similarly situated people" be treated equally, but children and adults are not similarly situated people in most circumstances.

There then remains the question of whether the legal right of parents[18] to control their children cuts across defendant's right to use a rating plan to exclude unescorted children.

We recognize the primary responsibility of parents for the care, control and upbringing of their children. At the same time, we do not believe we limit that broad, sweeping authority when we hold that defendant theater may establish rules for viewing movies. The choice remains with the parents as to what the children view. But, that choice does not extend to a right to violate the theater's rules under the rating system.

---

[18] For purposes here, we consider guardians *in loco parentis* and, thus, when we speak of parents, we include legal guardians.

While we affirm the trial court's award of summary judgment to defendant, we do not necessarily subscribe to all that he has said in his opinion. Under our analysis, we do not find it necessary to express an opinion regarding the content of the movie "Animal House". Our result does not depend on whether or not it is an obscene film.

In summary, we hold that some discrimination between adults and children is permitted by law; that in the civil rights statute the term "law" includes the entire body of law including but not limited to the constitution, the statutes, administrative rules and regulations, and the common law as embodied in decisions and judgments of courts; that theaters, such as defendant, are permitted by law to distinguish between adults and children for purposes of admission to a theater; that, in seeking to protect children, theaters may utilize a rating system such as used here to advise prospective patrons of the nature and content of movies to be shown; that the Civil Rights Act is not intended to and does not afford to children independent judicial review of the rating of each "R" or "X" rated movie; and that denial of admission to unescorted children is permitted by law.

Last, we set aside the award of attorney fees to defendant. Although the statute[19] authorizes award of attorney fees to successful complainants of violations under the Civil Rights Act, no provision is made for award of attorney fees to defendants. Consequently, there is no special statutory basis here for award of substantial attorney fees. Since we do not believe plaintiffs' claims hereunder are made in bad faith, there is no basis for such an award of attorney fees under either GCR 1963, 116.5 or GCR 1963, 117.3. Furthermore, the fact

---

[19] MCL 37.2802; MSA 3.548(802).

that the issues that plaintiffs attempt to raise are essentially of first impression leads us to deny any award of attorney fees.

Affirmed in part and reversed in part. No costs.

R. M. MAHER, J., concurs in the result only.