**Jill Ann LAFLER, an Individual, Plaintiff,**

v.

**ATHLETIC BOARD OF CONTROL, et al., Defendants.**

**No. G82–46 CA1.**

United States District Court, W. D. Michigan, S. D.

Feb. 9, 1982.

Paul A. Rosenbaum, Lansing, Mich., for plaintiff.

Gregory G. Prasher, Grand Rapids, Mich., Gregory T. Taylor, Asst. Atty. Gen., Lansing, Mich., for defendants.

## OPINION AND ORDER ON DEFENDANT'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

MILES, Chief Judge.

In this case the plaintiff seeks inter alia injunctive and declaratory relief which would allow her to compete in the Golden Gloves boxing competition sponsored by certain of the named defendants. This action was originally filed in Ingham County Circuit Court alleging that the defendants by failing to act upon her application to fight in the competition[1] were discriminating against her on the basis of sex in violation of the Equal Protection Clauses of the United States and Michigan Constitutions, the federal Civil Rights Act of 1964, and the Michigan Civil Rights Act (Elliot-Larsen). The state court issued an ex parte temporary restraining order which restrained the Golden Gloves sponsors from declaring a winner in plaintiff's weight class, the flyweight division, without allowing the plaintiff to compete. The defendants then properly removed the action to federal district court. Jurisdiction is proper over both the federal and state claims under 28 U.S.C. §§ 1331 and 1441.

■ The question now before the court, on the basis of the defendant's motion to dissolve the temporary restraining order issued by the state court, is whether the order should be continued as a preliminary injunction, or whether the order should be dissolved. In order to preserve the restraining order, the plaintiffs must satisfy the requirements for a preliminary injunction stated in *Mason County Medical Association v. Knebel*, 563 F.2d 256 (6th Cir. 1977).

*First*: That the plaintiff has a substantial likelihood of success on the merits.

*Second*: That the plaintiff will suffer irreparable harm if the preliminary injunction is not granted.

*Third*: That the defendants or others will not be unduly harmed by the issuance of the preliminary injunction.

*Fourth*: That the public interest will be served by the issuance of the preliminary injunction.

■ The court concludes that the plaintiff has not shown either a likelihood of success on the merits or that she will be irreparably harmed in the absence of a preliminary injunction. For that reason the temporary restraining order issued by the state court must be dissolved.

The Equal Protection Clauses of the United States and Michigan Constitutions are co-extensive, providing exactly the same protection to individuals. *Moore v. Spangler*, 401 Mich. 360, 258 N.W.2d 34. Therefore, the constitutional claims may be considered together. No provision of the Civil Rights Act of 1964 would appear to be applicable to this case. However, Article 3, M.S.A. §§ 3.548(301) and (302) [M.C.L.A. §§ 37.2301, 37.2302] of the Elliot-Larsen Act, which forbid sex discrimination in the provision of public accommodations, arguably apply to the boxing competition involved in this case. Therefore, the plaintiff's right to relief under the Elliot-Larsen Act must be considered separately.

### The Equal Protection Clause

In order to prevail on her constitutional claim of discrimination the plaintiff must prove, first of all, that state action is involved in the denial of her application to compete. The plaintiff admits that her application to compete was submitted to the Golden Gloves competition, which is a private, not a state, organization. All parties appear to agree that the rule which prohibits the plaintiff from participating in the competition was promulgated by the United States of America Amateur Boxing Federation (USA/ABF) and adopted by the Michigan Amateur Boxing Federation. It appears unlikely, based upon the decision and reasoning of court in *DeFrantz v. United States Olympic Committee*, 492 F.Supp. 1181 (D.D.C.1980), that either of these enti-

1. District tournament finals in which plaintiff would participate are scheduled for Wednes- day, February 10th, 1982.

ties could be considered agencies or arms of the state or federal government. The most that the plaintiff can show that the state defendants, the Athletic Board of Control and Virginia Zeeb, have done, is to acquiesce in some way in the Boxing Federation's enforcement of its own rules. This acquiescence, or even approval, without more, does not constitute state action. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Therefore, the plaintiff has not shown a likelihood of success under the Equal Protection Clause because of the probable absence of any state action.

Even assuming state action is present, it is unlikely that plaintiff's attempt to compete in the Golden Gloves competition will prove successful. Although many courts have recognized a woman's right to an equal opportunity to participate in sports, see e.g. *Fortin v. Darlington Little League, Inc.*, 514 F.2d 344 (1st Cir. 1975) and *Hoover v. Meiklejohn*, 430 F.Supp. 164 (D.Colo. 1977), courts have also recognized that such equal opportunity may be provided through separate teams or competitions for men and women. See *Yellow Springs Board of Education v. Ohio High School Athletic Association*, 647 F.2d 651 (6th Cir. 1981) and *O'Connor v. Board of Education of School District No. 23*, 645 F.2d 578 (7th Cir. 1981). The regulations promulgated under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.) at 45 C.F.R. § 8641(b) specifically permit the establishment of separate male and female teams in contact sports. The United States Congress, in calling for the provision of "equal opportunity to amateur athletes ... to participate ... without discrimination on the basis of ... sex ..." in the Amateur Sports Act, 36 U.S.C. § 391(b)(6), anticipated that such equal opportunity would sometimes be provided through the use of separate programs for men and women. 36 U.S.C. § 391(b)(7) and 36 U.S.C. § 392(a)(6).

The provision of separate competition for men and women is even more likely to be constitutionally permissible in the context of a contact sport such as boxing. Besides the Title IX regulations referred to above, several courts have distinguished between contact sports and non-contact sports in considering Equal Protection claims. See e.g. *Morris v. Michigan State Board of Education*, 472 F.2d 1207 (6th Cir. 1973), *Brenden v. Independent School District 742*, 477 F.2d 1292 (8th Cir. 1973), and *Carnes v. Tennessee Secondary School Athletic Association*, 415 F.Supp. 569 (E.D.Tenn.1976).

Gender-based classifications are not subject to strict scrutiny by the courts, and the Supreme Court has recently reiterated that such classifications will be upheld if they are based on real differences between the sexes, rather than sexual stereotypes, and if they bear a substantial relationship to an important governmental objective. *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). In *Michael M.* a state statutory rape law which applied only to men was upheld largely because of the fact that women can become pregnant and men cannot.

In this case, the real differences between the male and female anatomy are relevant in considering whether men and women may be treated differently with regard to their participation in boxing. The plaintiff admits that she wears a protective covering for her breasts while boxing. Such a protective covering, which the plaintiff apparently believes, and the court is inclined to believe, is necessary to protect a woman's breasts from injury in a boxing match, would violate Rule Six, Article 9 of the Amateur Boxing Federation rules currently in effect. The same rule requires contestants to wear a protective cup, a rule obviously designed for the unique anatomical characteristics of men.

The plaintiff also admits what several courts have pointed out based on medical evidence, i.e., that women generally have less muscle and bone tissue per pound of body weight than men. It is true that several courts have rejected the use of these general strength and durability factors to exclude individual women from competing

with men. However, each of these cases dealt with sports, such as football, *Clinton v. Nagy,* 411 F.Supp. 1396 (N.D.Ohio 1974), soccer, *Hoover v. Meiklejohn,* supra, and baseball, *Carnes v. TSSAA,* supra, in which no effort had been made to exclude or segregate males who were weaker or more prone to injury than the average male. Unlike these sports, boxing uses body weight as a proxy for strength in an attempt to equalize the relative physical capabilities of opposing boxers. The general dissimilarity in body make-up between men as a class and women as a class would jeopardize the use of body weight for this equalizing purpose in a unified male and female competition. Therefore, these general class characteristics are relevant to a decision regarding the status of women in boxing, even though they might not be relevant in other sports.

▆ Enough has been said to point out that boxing has developed certain safety rules and procedures which are specifically designed for men. It is unrealistic to believe that women could enter the sport of boxing and operate under the same rules with no detrimental effect on the safety of the participants. But if the general differences between men and women require the implementation of new rules to accommodate the participation of women in boxing, then the use of separate competitions for men and women is permissible. Where the sexes are not situated equally with respect to a particular activity, the state may deal with the sexes differently in regulating the activity. *Michael M.,* supra. And since sex is not a suspect classification, largely because there *are* real differences between the sexes which are relevant to the treatment of certain problems, the governmental judgment as to how to deal with those problems will not be subjected to strict scrutiny. *O'Connor v. Board No. 23,* supra.

It is true that there does not appear to be a woman's competition presently in place in which the plaintiff could compete. However, since it is likely that a separate competition will satisfy the Equal Protection Clause the court will not preliminarily order the defendants to allow the plaintiff to compete against men under safety rules and precautions developed, designed, and tested in the context of all-male competition. Such an order would be irresponsible and possibly dangerous to the plaintiff and other women who might wish to box competitively. Whatever might be the case with other sports, boxing is a dangerous enough sport under the best of circumstances to justify rejecting the summary injection of unknown risks into the sport without consideration of all of the factors involved.

### The Elliot-Larsen Act

The Michigan Civil Rights Act, commonly known as the Elliot-Larsen Act, forbids discrimination on the basis of sex in the provision of public accommodations. Public accommodations is broadly defined and might well include the kind of boxing competition in question here. However, the Act only forbids discrimination which is not otherwise "permitted by law". M.S.A. § 3.548(302) [M.C.L.A. § 37.2302]. This phrase has been interpreted to incorporate a "practical rule of reason" recognizing permissible forms of discrimination authorized by statutory, constitutional, and common law. *Cheeseman v. American Multi-Cinema, Inc.,* 108 Mich.App. 428, 310 N.W.2d 408 (1981). The judicially crafted exceptions to the broad dictates of the Equal Protection Clause which permit the use of sex classifications substantially related to important governmental objectives would seem to come within this rule of reason. The Elliot-Larsen Act itself recognizes certain permissible forms of sex discrimination. For instance, M.S.A. § 3.548(404) [M.C.L.A. § 37.-2404] specifically exempts single-sex, private schools from the provisions of the Act. The court concludes, therefore, that if separate boxing programs for men and women are permissible under the Equal Protection Clause, as appears likely, they are also permissible under the Elliot-Larsen Act. For that reason, the plaintiff has not shown a substantial likelihood of success under the Elliot-Larsen Act.

### Irreparable Harm

The plaintiff has also not shown that she would be irreparably harmed if the defend-

ants are allowed to conduct the Golden Gloves competition without her participation. Any Equal Protection or Elliot-Larsen violation which is found to have occurred can probably be remedied, for the reasons already discussed, by ordering the implementation of a separate women's competition. This remedy will be available regardless of the plaintiff's participation in the Golden Gloves contest.

Furthermore, the Golden Gloves competition is an annual event. The plaintiff is 19 years old and a boxing novice. In the unlikely event that the plaintiff's participation in the Golden Gloves is mandated, she will most likely be as physically able, and probably better prepared, to participate in next year's competition. In this sense too, then, the haste which would be occasioned by the issuance of a preliminary injunction is completely unwarranted.[2]

### Conclusion

To summarize, the court finds:

(1) That the plaintiff has not shown a likelihood of success on her claim to be allowed to compete in the Golden Gloves contest sponsored by the defendants, because:

    (a) It is unlikely that any state action is involved in preventing the plaintiff's participation in the contest, and,

    (b) It is likely that any Equal Protection or Elliot-Larsen violation which is

found can be remedied through the establishment of a separate woman's competition.

(2) That the plaintiff will not be irreparably harmed by the denial of a preliminary injunction, and

(3) That the public interest in conducting safe boxing competitions would not be served by the issuance of the preliminary injunction sought by the plaintiff.[3]

Therefore, the defendant's motion to dissolve the Temporary Restraining Order issued by the Ingham County Circuit Court is GRANTED, and no preliminary injunction shall issue.

IT IS SO ORDERED.

---

**2.** In this day of judicial activism in which trial courts are burdened with the mountainous load of difficult and complex litigation, deprived of the charismatic pronouncements generally reserved to the executive and legislative branches of government, some courts are tempted to plunge head-long into resolving political issues after an hour long hearing, or sometimes after no hearing at all, with results that are often regretted later.

**3.** The jury case currently being tried in Marquette (M 80–91 CA 3) illustrates the phenomena. A complaint was filed on June 4, 1980; an answer was filed on July 7, 1980. A pre-trial conference was held in Marquette on October 12, 1981. Numerous motions have been filed and the court has analyzed the issues in the case and has filed its opinions. Extensive depositions have been taken. Expert witnesses

have been deposed and produced at trial. Considerable study over many hours have been devoted to research the opinions of appellate courts as to what law applies. Numerous motions in limine have been considered. Vigorous and sophisticated cross-examination by able counsel will take place. The court will carefully craft jury instructions in order to insure that the law is properly applied and that a fair and thorough hearing is achieved.

The issues at stake in that case are in no way as complex, although they are at least as important to the parties involved, as the issues raised in the case at bar. This court, however, is expected to effectively decide the matter after reading a few affidavits and hearing an hour of argument by counsel. That is not the mission of the courts unless a great exigency compels action.