MICHIGAN DEPARTMENT OF CIVIL RIGHTS *ex rel* FORTON v
WATERFORD TOWNSHIP DEPARTMENT OF PARKS &
RECREATION

Docket No. 60304. Submitted January 6, 1983, at Detroit.—Decided
March 21, 1983. Leave to appeal applied for.

Plaintiff, the Michigan Department of Civil Rights *ex rel* Rocky
Forton, charged defendant, Waterford Township Department of
Parks & Recreation, with a violation of the Elliott-Larsen Civil
Rights Act stemming from the township's policy of maintaining
separate gender-based elementary level basketball leagues.
Rocky Forton's daughter, Susie Forton, had sought to play
basketball in the boy's elementary basketball league. A referee
for the Michigan Department of Civil Rights found no violation
of the civil rights act. Thereafter, the Michigan Civil Rights
Commission reversed the referee's findings of fact and law and
held that defendant's basketball program violated the Elliott-
Larsen Civil Rights Act. The commission ordered that defen-
dant cease and desist its unlawful discrimination on the basis
of sex. Following an appeal tried *de novo* in Oakland Circuit
Court the trial court, Richard D. Kuhn, J., issued an opinion
and order upholding defendant's program and dismissing plain-
tiff's complaint. Plaintiff appeals. *Held:*

1. Defendant's program of separate gender-based elementary
level basketball leagues violates § 302(a) of the Elliott-Larsen
Civil Rights Act. The separate leagues are not equal and do not
withstand equal protection analysis since the girls' league plays
during the fall, thus requiring girls to make a choice between
playing football or basketball, while the boys' league plays in

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes §§ 184, 185, 272, 275.

[2] 73 Am Jur 2d, Statutes § 155 *et seq.*

[3] 16A Am Jur 2d, Constitutional Law § 576.
Sex Discrimination—Supreme Court cases. 27 L Ed 2d 935.
Construction and application of state equal rights amendments
forbidding determination of rights based on sex. 90 ALR3d 158.

[4] 16A Am Jur 2d, Constitutional Law §§ 579, 769.

[5] 16A Am Jur 2d, Constitutional Law § 735 *et seq.*
73 Am Jur 2d, Statutes § 41.

the winter, therefore, the boys are not required to make the same choice.

2. The phrase "except where permitted by law" contained in the section of the Elliott-Larsen Civil Rights Act pertaining to prohibited conduct may be interpreted to include statutory, constitutional, and common law.

3. The Legislature intended to apply a practical rule of reason to the prohibition against discrimination on the basis of religion, race, color, national origin, age, sex, or marital status contained in § 302(a) of the Elliott-Larsen Civil Rights Act.

4. To be constitutional, gender-based classifications must be substantially related to important governmental objectives.

5. The weight of authority seems to support the constitutionality of separate but equal sports teams for males and females.

6. The defendant's subsequent modification of its rules to allow up to two girls to participate on each boys' team and two boys on each girls' team did not change the Court's conclusion. The Court does not believe that there should be any such quota.

Reversed. The decision of the Michigan Civil Rights Commission is upheld.

1. WORDS AND PHRASES — LAW — CIVIL RIGHTS.

The term "law" as used in the phrase "except where permitted by law" in the Elliott-Larsen Civil Rights Act was intended by the Legislature to include statutory, constitutional, and common law (MCL 37.2302; MSA 3.548[302]).

2. CIVIL RIGHTS — PROHIBITED CONDUCT — RULE OF REASON.

The Legislature intended to apply a practical rule of reason to the prohibition against discrimination on the basis of religion, race, color, national origin, age, sex, or marital status contained in the section of the Elliott-Larsen Civil Rights Act pertaining to prohibited conduct (MCL 37.2302[a]; MSA 3.548[302][a]).

3. CONSTITUTIONAL LAW — GENDER-BASED CLASSIFICATIONS — GOVERNMENTAL OBJECTIVES.

A gender-based classification must be substantially related to important governmental objectives in order to be constitutional.

4. CONSTITUTIONAL LAW — EQUAL PROTECTION — GENDER-BASED SPORTS LEAGUES.

Separate gender-based elementary level basketball leagues maintained by a township department of parks and recreation are not equal and thus do not withstand equal protection analysis

where the girls' league plays during the fall while the boys play in the winter and, therefore, girls are required to make a choice between playing football or basketball while the boys are not required to make such a choice; such separate league policy does not comply with the requirements of the section of the Elliott-Larsen Civil Rights Act pertaining to prohibited conduct; modification of the rules to allow a quota of up to two girls on a boys' team and two boys on a girls' team does not alter such a conclusion since there should not be any such quota (MCL 37.2302[a]; MSA 3.548[302][a]).

5. CONSTITUTIONAL LAW — EQUAL PROTECTION — UNITED STATES CONSTITUTION — MICHIGAN CONSTITUTION.

The Equal Protection Clauses of the United States and Michigan Constitutions are coextensive, providing exactly the same protection to individuals (US Const, Am XIV; Const 1963, art 1, § 2).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Michael A. Lockman,* Assistant Attorney General, for plaintiff.

*Peter J. Donlin,* for defendant.

Before: J. H. GILLIS, P.J., and D. F. WALSH and N. J. KAUFMAN,* JJ.

N. J. KAUFMAN, J. The Michigan Department of Civil Rights charged the Waterford Township Department of Parks & Recreation with violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* The charge stems from the township's policy of maintaining a gender-based elementary level basketball program. The Michigan Civil Rights Commission held that defendant's basketball program violated the Elliott-Larsen Civil Rights Act and ordered that defendant cease and desist its unlawful discrimination on the basis of sex. This order reversed the

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

prior findings of fact and law made by a referee of the Michigan Department of Civil Rights, who had found no violation of the civil rights act. Following an appeal tried *de novo* in Oakland County Circuit Court, the trial judge upheld defendant's program and dismissed plaintiff's complaint. The Michigan Department of Civil Rights appeals as of right.

The circuit court made the following findings of fact, which are not in dispute herein:

"1. Claimant, Rocky Forton and his daughter, Susie Forton, during all times pertinent to this proceeding were residents of the Township of Waterford, Oakland County, Michigan.

"2. Respondent, Waterford Township Department of Parks and Recreation, is a department within the municipal government of Waterford Township.

"3. Respondent administers, controls, operates, directs, and sponsors several recreational athletic programs, including an elementary basketball program.

"4. Respondent's elementary basketball program is divided by gender into two main leagues.

"5. Absent requests and approval to play in the opposite league, girls play basketball in the fall and boys play basketball in the winter.

"6. In January of 1978, Susie Forton sought to play basketball in the boys' elementary basketball league.

"7. In accordance with its former practice and policies, respondent would not allow Susie Forton to play basketball in the boys' league.

"8. In February of 1978, subsequent to the filing of the charges herein, the Honorable Francis X. O'Brien issued a preliminary injunction allowing Susie Forton to play in the boys' elementary basketball league.

"9. Susie Forton was then allowed to play, in accordance with the injunction.

"10. In November of 1978, respondent modified its rules to allow up to two girls on each boys' basketball team and two boys on each girls' basketball team.

"11. Respondent distributed statements explaining its

basketball league structure and modifications made to that structure.

"12. In the first season played under the modified rules, one girl requested to play in the boys' basketball league. She was allowed to do so.

"13. In the first season played under the modified rules, no boys requested to play in the girls' basketball league.

"14. Each basketball league is broken down into several divisions according to skill level and ability, for purposes of promoting balanced competition.

"15. The league directors, separately or in conjunction with the league coaches, make the decisions relevant to which teams and people play in which leagues, based upon observation of relative skill levels and abilities.

"16. No special training is required or given for purposes of facilitating judgments of relative skill levels and abilities.

"17. The boys' league is perceived by the recreation director as having, in general, an average skill level higher than that of the girls' league.

"18. The facilities afforded the girls' fall basketball league are parallel and equal to those offered the boys' winter basketball league.

"19. On any given Saturday, respondent has physical facilities to accommodate approximately 1300 children in an elementary basketball program.

"20. Physical facilities in which to conduct an elementary basketball program for 2600 children are available during the months of September through March.

"21. At the time of the hearing, approximately 1800 children participated in the fall and winter elementary basketball leagues.

"22. A primary reason for respondent's separation of the elementary basketball leagues by gender is respondent's perception that facilities are unavailable to accommodate all children at the same time."

On appeal, we are faced with the question of

whether defendant's program of separate gender-based elementary level basketball leagues violates § 302(a) of the Elliott-Larsen Civil Rights Act, MCL 37.2302(a); MSA 3.548(302)(a). This issue is one of first impression in Michigan.

MCL 37.2302(a); MSA 3.548(302)(a) provides:

"Except where permitted by law, a person shall not:
"(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status."

The dispute herein centers around the interpretation of the phrase "except where permitted by law". Plaintiff argues that this language indicates that the statute prohibits any discrimination except where the Legislature or its authorized agencies have created specific statutory or regulatory exceptions to the non-discrimination policy of the act. Because there is no specific exception to this statute applicable to elementary level basketball leagues, plaintiff concludes that defendant's policy is illegal. The trial court, in refusing to impose the "per se" test urged by plaintiff, interpreted the language more broadly to allow discrimination which is lawful under the constitution, specifically in this case the Equal Protection Clause. US Const, Am XIV; Const 1963, art 1, § 2.[1]

In *Cheeseman v American Multi-Cinema, Inc,* 108 Mich App 428; 310 NW2d 408 (1981), *lv den* 413 Mich 890 (1982), at least two members of a

[1] The Equal Protection Clauses of the United States and Michigan Constitutions are coextensive, providing exactly the same protection to individuals. *Moore v Spangler,* 401 Mich 360; 258 NW2d 34 (1977). Therefore, for purposes of this opinion, the equal protection analysis contained herein will be applicable to both the Michigan and United States Constitutions.

panel of this Court agreed that the language of the statute could not be read as narrowly as the plaintiff in this case urges. In the context of a suit brought under the Elliott-Larsen Civil Rights Act by six minor plaintiffs alleging age discrimination because they were not allowed into defendant's theater to see an R-rated movie, the two-judge majority held that the words "except where permitted by law" were intended by the Legislature to mean except as permitted by common law and constitutional law in addition to statutory law. As explained by the Court:

"The other side of the statute relates to limitations placed on each of us. A person is prohibited from *denying* to anyone full and equal enjoyment of the facilities of a place of public accommodation because of age, *except where permitted by law.*

"The latter emphasized portion is clear indication of the intent of the Legislature to retain and apply a practical rule of reason to the prohibition against discrimination on the basis of age. Otherwise, literal application of the prohibition against age discrimination would outlaw many regulations, rules, laws and policies designed to protect children. We believe it is clear that, by adding the words 'except where permitted by law', the Legislature intended, among other things, to retain age discrimination as a protection to children.

\* \* \*

"In interpreting the words 'except where permitted by law', we do not believe the Legislature intended to mean only 'statutory law'. If the Legislature had so intended, it could easily have so indicated. Rather, the Legislature intended 'law' to mean the common law and the constitutional law in addition to statutory law. The cases support this conclusion." *Cheeseman, supra,* 108 Mich App 433. (Emphasis in original.)

We agree with the majority in *Cheeseman* that the Legislature intended to apply a "practical rule

of reason" in § 302(a). Consequently, we also interpret the language "except where permitted by law" to include statutory, constitutional, and common law.

Although no Michigan appellate court has addressed the question of the legality of gender-based elementary level basketball leagues, a recent decision from the United States District Court for the Western District of Michigan addressed a similar factual situation. *Lafler v Athletic Board of Control*, 536 F Supp 104 (WD Mich, 1982). There, a female plaintiff alleged that defendant's refusal to allow her to compete in a boxing competition sponsored by defendant amounted to discrimination against her on the basis of sex in violation of the Equal Protection Clauses of the United States and Michigan Constitutions and § 302(a) of the Elliott-Larsen Civil Rights Act. The Court followed the *Cheeseman* "rule of reason" rationale and concluded (1) that it appeared likely that separate boxing teams for men and women would be permissible under the Equal Protection Clauses and (2) that if the separate teams were permissible under the Equal Protection Clauses, they would also be permissible under § 302(a) of the Elliott-Larsen Civil Rights Act. *Lafler, supra*, p 107.

The test herein becomes, therefore, whether the separate gender-based basketball leagues in this case can withstand equal protection analysis. If so, they will also be permissible under the Elliott-Larsen Civil Rights Act.

To be constitutional, gender-based classifications must be substantially related to important governmental objectives. *Craig v Boren*, 429 US 190, 197; 97 S Ct 451, 457; 50 L Ed 2d 397, 407 (1976), *reh den* 429 US 1124; 97 S Ct 1161; 51 L Ed 2d 574 (1977), see also *O'Connor v Bd of Ed of School Dist*

*23,* 545 F Supp 376, 378 (ND Ill, 1982), and cases cited therein. Participation by females on traditionally all-male athletic teams has drawn a great deal of attention in recent years and engendered considerable controversy. This is especially true with regard to those activities classified as "contact" sports. Basketball is considered to be a member of that classification. See Anno: *Validity, under federal law, of sex discrimination in athletics,* 23 ALR Fed 664-683; Anno: *Application of state law to sex discrimination in sports,* 66 ALR-3d 1262. While it appears that in most jurisdictions a girl may not be prevented from participating on a boys' team where there is no girls' team in a particular sport, the question of whether a girl can be prohibited from joining a boys' team where there is a separate girls' team which is equal in facilities, coaching, etc., has caused difficulty. Nevertheless, the weight of authority seems to support the constitutionality of "separate but equal" sports teams for males and females. See *Lafler, supra; Cape v Tennessee Secondary School Athletic Ass'n,* 563 F2d 793 (CA 6, 1977); *O'Connor, supra,* and cases cited therein.

In the instant case, defendant would argue that its basketball program falls within this constitutionally permissible "separate but equal" classification. However, although it appears that the facilities, funding, and coaching are the same for both the girls' and boys' leagues, we do not believe the separate leagues are "equal". As stated in the trial judge's uncontested findings of fact, the girls' basketball league plays during the fall while the boys play in the winter. As a result, a girl such as Susie Forton, who played on the football team in the fall, is required to make a choice between playing football or basketball. Although this case is now

moot as to Susie Forton, the same choice faces all of the other girls involved in defendant's athletic program. This is a choice the boys in the program are not required to make. For this reason, we conclude that the separate leagues involved herein are not equal, and thus do not withstand equal protection analysis. Consequently, defendant's separate league policy also does not comply with the requirements of § 302(a) of the Elliott-Larsen Civil Rights Act.

We note that subsequent to the filing of this lawsuit defendant modified its rules to allow up to two girls to participate on each boys' basketball team and two boys on each girls' basketball team. However, this does not change our conclusion herein. Although there are numerous basketball teams involved in this program and allowing two members of the opposite sex on each team would accommodate a large number of applicants, it is still quite conceivable that there could, in the future, be girls (or boys) who are refused participation on a team because the "quota" of members of their sex has been filled. We do not believe there should be any such quota.

Reversed. The decision of the Michigan Civil Rights Commission is upheld. No costs. A public question.