GIANNOTTA v GOVERNOR

1. CONSTITUTIONAL LAW—JUDGES—VACANCIES—APPOINTMENTS—GOV-
   ERNOR—SUPREME COURT JUSTICES.
   The section of the state constitution authorizing the Governor of
   the state to appoint judges to fill vacancies in judicial offices
   occurring between elections applies to such judicial vacancies
   occurring on the Supreme Court (Const 1963, art 6, § 23).

2. CONSTITUTIONAL LAW—INTERPRETATION—RELATED PROVISIONS—IN-
   TENT OF DRAFTERS.
   The Supreme Court has approved the interpretative method of
   comparing related provisions of the law in order to reach an
   understanding of what the drafters actually intended by their
   use or omission of terms.

3. CONSTITUTIONAL LAW—INTERPRETATION—INTENT OF PEOPLE—COM-
   MON UNDERSTANDING.
   A constitutional provision should be given that interpretation
   which the great mass of the people themselves would give it;
   the intent to be arrived at is that of the people who ratified it
   in the sense most obvious to the common understanding.

Appeal from Wayne, John D. O'Hair, J. Submit-
ted June 16, 1976, at Detroit. (Docket No. 26579.)
Decided August 24, 1976.

Complaint by Susan L. Giannotta against Wil-
liam G. Milliken, individually and as Governor of
the State of Michigan, and Lawrence B. Lindemer,
individually and as Justice of the Michigan Su-
preme Court, seeking an injunction barring guber-
natorial appointments to fill vacancies on the Su-
preme Court and a declaratory judgment that

REFERENCES FOR POINTS IN HEADNOTES
[1] 46 Am Jur 2d, Judges § 239.
[2, 3] 16 Am Jur 2d, Constitutional Law §§ 58, 59, 64, 65, 72 *et seq.*

Justices so appointed may not remain in the office. Judgment for defendants. Plaintiff appeals. Affirmed.

*Goodman, Eden, Millender, Goodman & Bedrosian* (by *Richard M. Goodman* and *James A. Tuck),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Charles D. Hackney,* Assistant Attorney General, for defendant Milliken.

*Foster, Swift & Collins, P. C.,* for defendant Lindemer.

Before: V. J. BRENNAN, P. J., and N. J. KAUFMAN and R. H. CAMPBELL,* JJ.

V. J. BRENNAN, P. J. Plaintiff Susan L. Giannotta filed civil suit in Wayne County Circuit Court on November 18, 1975, challenging the authority of the Governor under Article 6, § 23 of the Michigan Constitution, as amended, to fill vacancies in the office of Justice of the Supreme Court by appointment, or the right of any Justice so appointed to remain in office. By this action, plaintiff sought to enjoin the defendant Governor from appointing now, and by declaratory relief from appointing in the future, any Justice of the Michigan Supreme Court to fill a vacancy, and also sought by amended complaint filed November 24, 1975, declaratory relief as to defendant Associate Justice Lindemer, regarding his right to continue sitting as a gubernatorial appointee.

This suit arose out of a dispute over the present meaning of Article 6, § 23 of the Michigan Consti-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tution of 1963. The original section was conceived with the idea of implementing, as closely as possible, a purely elective judiciary in this state. By § 23, the drafters of the Constitution attempted to account for the inevitable situation in which a judicial office-holder would leave office prior to a point at which a regular or special election could be held. The section, as initially drafted, read as follows:

"Section 23. A vacancy in the elective office of a judge of any court of record shall be filled at a general or special election as provided by law. The supreme court may authorize persons who have served as judges and who have retired, to perform judicial duties for a limited period of time from the occurrence of the vacancy until the successor is elected and qualified. Such persons shall be ineligible for election to fill the vacancy." Const 1963, art 6, § 23.

The unexpected occurred when, in practice, there were simply too few retired judicial office-holders to fill the vacancies which became available. Consequently, in 1968, §§ 20, 22, 24 and, in particular, 23, were amended by vote of the Legislature and a special election. Section 23, as amended, reads as follows:

"A vacancy shall occur in the office of judge of any court of record or in the district court by death, removal, resignation or vacating of the office, and such vacancy shall be filled by appointment by the governor. The person appointed by the governor shall hold office until 12 noon the first day of January next succeeding the first general election held after the vacancy occurs, at which election a successor shall be elected for the remainder of the unexpired term. Whenever a new office of judge in a court of record, or the district court, is created by law, it shall be filled by election as provided by law. The supreme court may authorize

persons who have been elected and served as judges to perform judicial duties for limited periods or specific assignments." Const 1963, art 6, § 23, effective August 6, 1968.

The present controversy is simply stated: does the concept of "the office of judge" comprehend "the office of justice" under the amended § 23. We feel the amended section intended the inclusion of justices of the Supreme Court.

Plaintiff argues that the amendment restores the right of gubernatorial appointment only as to judges of the lower courts of record. She contends that the pervasive commitment to an elected judiciary evidenced by the Constitutional Convention of 1963 prevents our finding the section applicable to justices where the word itself was not used. Evidence of this position is allegedly indicated by the numerous designations in other constitutional provisions distinguishing between "judge" and "justice". We find problems with this argument.

Clearly, the Supreme Court has approved the interpretative method of comparing related provisions of the law in order to reach an understanding of what the drafters actually intended by their use or omission of terms. *Viculin v Department of Civil Service,* 386 Mich 375, 390–392; 192 NW2d 449 (1971), *Evans v US Rubber Co,* 379 Mich 457, 460–463; 152 NW2d 641 (1967). However, on reviewing all relevant sections, we find much evidence in the Constitution against plaintiff's position.

For instance, Article 6, § 6, which speaks only of the Supreme Court, regarding the formal requirements of its opinions, uses the designation of "judge".

In another section, Article 6, § 8, excepting "judges of courts of record" from the legislative

directive that laws be enacted to provide for recall of elective officers, we find no reason to believe that the failure to use the word "justice" should prevent us from applying this exemption to the Supreme Court, were this issue ever to arise.

Article 6, § 25 permits removal by the Governor of "any judge" where a concurrent resolution by two-thirds of the members of both houses of the Legislature gives reasonable cause for removal short of grounds for impeachment. We do not believe "justices" of the Supreme Court are immune from the section simply because the term was not used. Consequently, this Court does not find the merit in this line of argument which plaintiff would have us find.

However, the basic problem of determining the intent of the amended provision requires a broader approach. We find some guidance in a recent Supreme Court decision. *Traverse City School District v Attorney General,* 384 Mich 390, 405, 406; 185 NW2d 9 (1971). Two relevant tests of construction are provided there.

The first, described as the rule of "common understanding", seeks to establish what the reasonable common sense interpretation would be, and was stated in this way by Justice COOLEY:

"A constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.* 'For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, *the intent to be arrived at is that of the people,* and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding,* and ratified the instrument in the belief that that was the sense designed to be

conveyed.' (Cooley's Const Lim 81)." *Traverse City School Dist v Atty Gen, supra,* at 405.

When applied to this case, we must believe the voters in 1968 were not looking for the abstruse and unstated distinction whether Proposal No. 3,[1] as stated on the ballot, meant to exclude "justices" when using the term "judge". We feel most likely they voted on the proposition of whether or not the Governor should be allowed to fill vacancies in courts of record in this state. To believe otherwise would be injecting a distinction into the voter's mind which was not clearly present. We decline to do so.

Second, the Court must attempt to clarify the meaning and circumstances surrounding the adoption of this section, as amended, and determine the purpose sought to be accomplished. See *Kearney v Board of State Auditors,* 189 Mich 666, 673; 155 NW 510 (1915).

This test was applied recently where legislation, pursuant to an Oakland County reorganization of five municipal courts with five judges into two

---

[1] The ballot read as follows:

"PROPOSAL No. 3

"PROPOSED AMENDMENT TO THE STATE CONSTITUTION RELATING TO THE FILLING OF JUDICIAL VACANCIES AND EXTEND EXISTING CONSTITUTIONAL PROVISIONS TO APPOINT JUDGES.

"The proposed amendments to Sections 20, 22, 23 and 24 of Article VI of the State Constitution would do the following:

"1) Vacancies in the office of Judge of Courts of Record or District Courts would be filled by the Governor until January 1 following the next general election.

"2) Extend existing constitutional provisions to appointed judges.

"SHALL THE STATE CONSTITUTION BE AMENDED TO PROVIDE THAT THE GOVERNOR SHALL FILL JUDICIAL VACANCIES AND TO EXTEND EXISTING CONSTITUTIONAL PROVISIONS TO APPOINTED JUDGES?

"YES
"NO"

district courts with three judges, failed to provide for immediate elections under Article 6, § 23. *Schwartz v Secretary of State,* 393 Mich 42; 222 NW2d 517 (1974). Despite this failure, the Court found adequate support in the legislative meaning and purpose sought to be achieved through § 23, as amended, to allow the "appointment" by legislative reorganization. The Court observed the following concerning the legislative meaning and purpose of amending § 23:

"The language of the section makes two things abundantly clear. First, the people intended to rectify the mistake of the 1963 Constitution in its original form of having removed the historic constitutional authority of the Governor to appoint persons to fill judicial vacancies. This Court would blink the facts of life if it did not take judicial notice of the fact that this omission embarrassed the operation of government by leaving important judicial offices without their own regular incumbent for long periods of time. The first sentence of § 23, as amended, rectifies this error by restoring gubernatorial authority to appoint to fill judicial vacancies caused by the incumbent leaving office for one reason or another." *Schwartz v Secretary of State, supra,* 47.

We feel this statement is as applicable to this case as to *Schwartz.* Here, the Legislature was also attempting to rectify the prior error as to possible gubernatorial appointments. Notice that Justice WILLIAMS is careful to use the term "judicial vacancies", not distinguishing "justices" of his own Court.

In short, under all the rules of construction we have discovered, plaintiff simply cannot persuade us of the soundness of her position. On full examination of Article 6 and relevant decisions under this article, we hold that § 23, as amended, does include Justices of the Supreme Court within its

provision for gubernatorial appointment to fill vacancies occurring from time to time between designated elections. We affirm the circuit court in refusing injunctive or declaratory relief to plaintiff.

On the matter of declaratory relief concerning defendant Lindemer, we find against plaintiff on the authority of GCR 1963, 715.1(1), which speaks to the procedure required of what we perceive as a clear *quo warranto* claim. We affirm the ruling of the circuit court on this matter.

Plaintiff's other claims have been reviewed and found without substantial merit.

Affirmed.