DEPARTMENT OF CIVIL RIGHTS v BEZNOS CORPORATION

Docket No. 62753. Submitted August 19, 1982, at Detroit.—Decided May 4, 1983. Leave to appeal applied for.

The Beznos Corporation owns two multi-unit apartment complexes in Farmington Hills, Michigan. The Michigan Department of Civil Rights charged Beznos with unlawful age discrimination in setting aside certain apartment buildings for families while restricting the remaining buildings to individuals without children. The Michigan Civil Rights Commission ordered Beznos to cease the policies and awarded damages and attorney fees to various complainants. The Oakland Circuit Court, Francis X. O'Brien, J., reversed the order of the commission. The Department of Civil Rights appealed. *Held:*

The order of the circuit court should be affirmed. The Court of Appeals declined to infer a broad legislative intent to require that all apartments be made available to children. The construction of the Civil Rights Act that the Department of Civil Rights advocates would force landlords to bear increased economic burdens and would force other tenants to live near children against their wishes.

Affirmed.

MacKENZIE, J., dissented. She believed that the segregation which Beznos accorded to families with children constituted discrimination against a person on the basis of the age of the persons residing with that person in the terms, conditions, and privileges of a real estate transaction and in the furnishing of facilities or services in connection with that transaction. To the extent that Beznos restricted families with children to certain designated buildings, Beznos refused to engage in real estate transactions concerning apartments in other buildings with

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes §§ 145, 146, 194.
[2, 6, 7] 15 Am Jur 2d, Civil Rights § 255.
[2] 73 Am Jur 2d, Statutes §§ 281, 283.
[3] 73 Am Jur 2d, Statutes §§ 213-216.
[4] 73 Am Jur 2d, Statutes § 194.
[5] 73 Am Jur 2d, Statutes § 268.
[7] 15 Am Jur 2d, Civil Rights § 249 *et seq.*

members of the family on the basis of the age of persons residing with them, even though Beznos might have been willing to engage in other real estate transactions with such persons concerning apartments in the designated buildings. She would reverse.

## OPINION OF THE COURT

1. STATUTES — JUDICIAL CONSTRUCTION.

A statute must be enforced as written where the statutory language is clear and unambiguous on its face; however, if the language contains an ambiguity, or is susceptible to two or more constructions, the Court of Appeals should ascertain and effectuate the intent of the Legislature.

2. CIVIL RIGHTS — LANDLORDS — RESTRICTIONS REGARDING CHILDREN.

The Elliott-Larsen Civil Rights Act should not be construed so as to prohibit a landlord from restricting families with children to certain apartment buildings within an apartment complex because such a construction would force landlords to bear increased economic burdens and would force other tenants to live near children against their wishes (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.).*

## DISSENT BY MACKENZIE, J.

3. STATUTES — JUDICIAL CONSTRUCTION.

*A court, in construing a statute, may compare related provisions of the statute to reach an understanding of what the drafters actually intended by their use or omission of terms and when a statute contains words grouped in a list, the words should be given related meaning.*

4. COURTS — STATUTES.

*It is the duty of a court to enforce a statute as it is written if the statute is clear and unambiguous.*

5. COURTS — STATUTES.

*It is not the role of the Court of Appeals to pass on the wisdom of a statute.*

6. CIVIL RIGHTS — LANDLORDS — RESTRICTIONS REGARDING CHILDREN.

*A landlord's restricting families with children to certain apartment buildings within an apartment complex is plainly discrimination against a person on the basis of the age of the persons residing with that person in the terms, conditions, and privileges of a real estate transaction and in the furnishing of facilities or services in connection with that transaction.*

7. Civil Rights — Landlords — Family Restrictions.

An apartment complex landlord may exclude or segregate families for legitimate nondiscriminatory reasons which are not mere pretexts for discrimination.

*Evans & Luptak* (by *Gordon S. Gold*), for respondent.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Michael A. Lockman* and *Howard E. Goldberg,* Assistants Attorney General, for claimant.

Before: Bronson, P.J., and MacKenzie and K. N. Sanborn,* JJ.

Per Curiam. Beznos Corporation owns two apartment complexes in Farmington Hills. The Department of Civil Rights found that certain policies of Beznos violated the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* The policies in question restricted use of complex swimming pools by children and restricted families with children to certain apartment buildings. The department issued an order which required Beznos to give up its policies and to pay damages and attorney fees to various complainants. Beznos petitioned for review of the department's decision in circuit court and, after a trial *de novo* pursuant to MCL 37.2606; MSA 3.548(606), the department's decision was reversed. The department appeals by right.

At issue here is MCL 37.2502; MSA 3.548(502), which provides in part:

"(1) A person engaging in a real estate transaction, or a real estate broker or salesman, shall not on the basis

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

of religion, race, color, national origin, age, sex, or marital status of a person or a person residing with that person:

"(a) Refuse to engage in a real estate transaction with a person.

"(b) Discriminate against a person in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith."

MCL 37.2103(a); MSA 3.548(103)(a) contains the following definition:

" 'Age' means chronological age except as otherwise provided by law."

If the language used in a statute is clear and unambiguous, we must enforce it as written, but, if the language is ambiguous, we must ascertain and effectuate the intent of the Legislature. *Davis v River Rouge Bd of Ed,* 73 Mich App 358, 363; 251 NW2d 585 (1977). The statute at issue here prohibits discrimination on the basis of chronological age in real estate transactions but makes no mention of disparate treatment of families with children. Relationships between parents and their children are more than simply relationships between persons of different ages.

An exhaustive study of the problem of discriminatory treatment of families with children is: Note, *Why Johnny Can't Rent—An Examination of Laws Prohibiting Discrimination Against Families in Rental Housing,* 94 Harv L Rev 1829 (1981). Disparate treatment is common and becoming increasingly more common. *Id.,* pp 1833-1835. The problem of disparate treatment may be the result of economic pressures in the housing market. *Id.,* pp 1835-1836:

. "The social and economic forces fueling this growth in child-exclusion policies are not fully understood. Landlords might exclude families because of children's 'mischievousness, boisterousness and rowdyism.' In fact, 73% of the landlords surveyed in the 1980 HUD [R. Marans, M. Colten et al., Measuring Restrictive Rental Practices Affecting Families With Children: A National Survey 8 (1980) (prepared for the Office of Policy Development and Research, Department of Housing and Urban Development, by the Survey Research Center, Institute for Social Research, University of Michigan)] study considered unsupervised children to be a problem. Although the desire to avoid these inconveniences might partially explain the growth of exclusionary practices, it is unlikely that landlords would severely restrict their market for this reason alone.

"A more persuasive explanation for child-exclusion policies lies in the financial advantages accruing to a landlord who restricts tenancy to adults. It has been suggested that landlords can avoid unnecessary costs by refusing to rent to families. Eighty-one percent of the landlords surveyed in the 1980 HUD study indicated that the maintenance costs associated with renting to families were either 'a big problem' or 'somewhat a problem.' Higher insurance costs were also seen as troublesome, although to a lesser extent. If landlords are unable to pass on these higher costs because of rent control or weak demand, exclusionary practices might be their only way of making ends meet. But there is a more lucrative aspect to child exclusion. The evidence suggests that some landlords are able to command a premium for excluding children. The 1980 HUD study indicated that rent in buildings that restrict children tends to be higher than in those that admit them freely. A detailed 1980 study of the Atlanta rental housing market corroborated this finding. Vacancy rates were lower, rents higher, and waiting lists longer for adults-only units than for those that accepted children." (Footnotes omitted.)

While the department's goal may be laudable, the construction of the statute it advocates would

force landlords to bear increased economic burdens and would force other tenants to live near children against their wishes. While the discriminatory treatment of families with children is the subject of considerable national controversy, we cannot conclude that the Legislature intended such a major innovation in the law to be affected by implication. Absent clear language as to this specific question, we decline to infer a broad legislative intention to require that all apartments be made available to children.

Affirmed. No costs, a public question being involved.

MACKENZIE, J. *(dissenting).* Beznos Corporation owns two multi-building apartment complexes, Muirwood and Fairmont, in Oakland County. A dispute arose between the corporation and several of its tenants at Muirwood concerning policies limiting the use of the swimming pool at the complex by children. The tenants complained to the Department of Civil Rights, which commenced its own investigation. The department discovered that Beznos would only rent certain designated apartments in its complexes to families with children. For example, at Muirwood, only 36 apartments out of 928 were designated for families with children. Beznos would not rent other apartments to families with children if all designated apartments were filled, but would rent designated apartments to people without children.

After various administrative proceedings, the Civil Rights Commission held that the policies of Beznos violated the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* Beznos was ordered to cease its policies and to pay damages and attorney fees to tenants who had joined the proceedings as individual claimants.

Beznos obtained a review *de novo* of the commission's decision in circuit court pursuant to MCL 37.2606; MSA 3.548(606). Beznos settled with the individual claimants and with the Department of Civil Rights as to the swimming pool rule. The parties by stipulation framed the remaining issue as follows:

"May the owner of a multi-building apartment complex lawfully restrict families with children to certain designated buildings?"

The circuit court held that such restriction was not unreasonable and reversed the decision of the commission. The department appeals by right.

MCL 37.2502(1); MSA 3.548(502)(1) provides in part:

"A person engaging in a real estate transaction, or a real estate broker or salesman, shall not on the basis of religion, race, color, national origin, age, sex, or marital status of a person or a person residing with that person:

"(a) Refuse to engage in a real estate transaction with a person.

"(b) Discriminate against a person in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith."

MCL 37.2103(a); MSA 3.548(103)(a) contains the following definition:

" 'Age' means chronological age except as otherwise provided by law."

Beznos Corporation argues, and the circuit court held, that reasonable classifications based on age do not violate the statute. Beznos seeks to support

this holding by drawing an analogy to cases decided under the Equal Protection Clause of US Const, Am XIV. Legislative judgments that interfere with fundamental constitutional rights or that involve suspect classifications are subjected to strict scrutiny. *San Antonio School Dist v Rodriguez,* 411 US 1, 16; 93 S Ct 1278; 36 L Ed 2d 16 (1973). However, classifications based on age are not suspect. *Massachusetts Bd of Retirement v Murgia,* 427 US 307; 96 S Ct 2562; 49 L Ed 2d 520 (1976). Housing is not a fundamental constitutional right. *Belle Terre v Boraas,* 416 US 1, 7; 94 S Ct 1536; 39 L Ed 2d 797 (1974). Under such circumstances, the test of a legislative classification is whether it bears a rational relationship to a legitimate state object. *Reed v Reed,* 404 US 71, 76; 92 S Ct 251; 30 L Ed 2d 225 (1971). Beznos argues that, because the Legislature employed the word "discriminate" in the statute, the Legislature intended to forbid only classifications which, if drawn by the state, would violate the Equal Protection Clause.

In construing a statute, a court may compare related provisions of the statute to reach an understanding of what the drafters actually intended by their use or omission of terms. *Giannotta v Governor,* 71 Mich App 15, 18; 246 NW2d 357 (1976). When a statute contains words grouped in a list, the words should be given related meaning. *Third Nat'l Bank in Nashville v Impac, Limited, Inc,* 432 US 312, 322; 97 S Ct 2307; 53 L Ed 2d 368 (1977). The statute at issue here groups religion, race, color, national origin, sex, and marital status together with age. Yet race, for example, is a suspect classification to which the "strict scrutiny" test applies. *McLaughlin v Florida,* 379 US 184, 191-192; 85 S Ct 283; 13 L Ed 2d 222 (1964). By grouping age together with race, the Legislature

demonstrated an intent that classifications based on age be analyzed on the same basis as classifications based on race. If we were to accept the attempt of Beznos to import into the statute equal protection analysis distinguishing between such classifications, we would be circumventing the intention of the Legislature.

If a statute is clear and unambiguous, it is the duty of a court to enforce it as written. *Oakland County Prosecutor v 46th Dist Judge,* 76 Mich App 318, 325; 256 NW2d 776 (1977). It is not the role of the Court of Appeals to pass on the wisdom of a statute. *People v Elowe,* 85 Mich App 744, 750; 272 NW2d 596 (1978). Beznos urges that segregation of families with children promotes the interest of tenants without children in enjoying quiet and peaceful living conditions and enables Beznos to maintain competitive and desirable apartment complexes. Such policy arguments form no basis for departure from the unambiguous language of the statute. The statute prohibits classifications based on age; it contains no exception for "reasonable" classifications.

Discrimination in the sale or rental of housing on the basis of race, color, religion, sex, or national origin is prohibited in 42 USC 3604 in language similar to that employed in the statute at issue here. In *United States v Mitchell,* 580 F2d 789 (CA 5, 1978), the Court held that the federal statute was violated when a large apartment complex steered blacks to a particular section of the complex and refused to show, offer, or make available to blacks vacant apartments in the "white" section of the complex. The treatment which Beznos here accorded to families with children is indistinguishable from that which the apartment complex in *Mitchell* accorded to blacks. Such segregation is

plainly discrimination against a person on the basis of the age of the persons residing with that person in the terms, conditions, and privileges of a real estate transaction and in the furnishing of facilities or services in connection with that transaction. Moreover, to the extent that Beznos restricts families with children to certain designated buildings, Beznos refuses to engage in real estate transactions concerning apartments in other buildings with members of the family on the basis of the age of persons residing with them, even though Beznos may be willing to engage in other real estate transactions concerning apartments in the designated buildings with such persons.

The apartments operated by Beznos fit within none of the express exceptions to the requirements of MCL 37.2502(1); MSA 3.548(502)(1) contained in MCL 37.2503; MSA 3.548(503). Beznos relies on *Cheeseman v American Multi-Cinema, Inc,* 108 Mich App 428; 310 NW2d 408 (1981), in which the Court held that refusal to allow children to attend a showing of an "R" rated movie at defendant's theater without a parent or guardian accompanying them did not violate MCL 37.2302; MSA 3.548(302). However, that section forbids discrimination in public accommodations "except where permitted by law" and the holding in *Cheeseman* was based on that exception. No such exception is contained in MCL 37.2502; MSA 3.548(502).

MCL 37.2103(a); MSA 3.548(103)(a) defines "age" as chronological age "except as otherwise provided by law", but this exception is of no assistance to Beznos since Beznos is not claiming that age means something other than chronological age in this context. This exception to the definition of age cannot be construed as an exception to the statutory prohibitions of discrimination on the basis of age.

Even if, however, an analogy to *Cheeseman* could be drawn here, it would not justify the policies of Beznos. Beznos correctly points out that a higher degree of care is required where children are involved. See, for example, *Powers v Harlow,* 53 Mich 507; 19 NW 257 (1884). But Beznos cannot escape this duty of care merely by renting apartments to families with children only in certain designated buildings. See *Butler v Watson,* 193 Mich 322; 159 NW 507 (1916), in which the one-year-old granddaughter of defendant's tenant recovered for an injury caused by a defect in a portion of the premises over which defendant landlord had retained control, even though defendant had rented the premises to his tenant on the undertsanding that small children would not live there. The Court explained that the child had been left by her mother with her grandparents and that a landlord's duty of care is owed not only to his tenants but also to their family, guests, servants, and all those approaching or leaving the premises for legitimate purposes.

Beznos complains that its complexes consist of large numbers of relatively small apartments which, because of their size, are not suitable for many families with children. Comparison of cases decided under statutes analogous to that at issue here convinces us that Beznos may exclude or segregate families for legitimate nondiscriminatory reasons which are not mere pretexts for discrimination. See, for example, *Clark v Uniroyal Corp,* 119 Mich App 820; 327 NW2d 372 (1982). The record shows that Beznos limits the number of people who may live in each apartment. Rules of this type do not violate the statute unless it is shown that they are mere pretexts for discrimination.

I would reverse.