DEPARTMENT OF CIVIL RIGHTS v BEZNOS CORPORATION

Docket No. 71737. Argued October 2, 1984 (Calendar No. 5).—Decided December 28, 1984. Released January 29, 1985.

The Department of Civil Rights brought an action in the Oakland Circuit Court against the Beznos Corporation, seeking to enjoin Beznos from proceeding with the eviction of certain of its tenants from an apartment complex that it owned and from enforcing a rule prohibiting use of pool facilities at the complex by the tenants' children. The court issued a temporary injunction halting the evictions and modifying the rule, pending a full hearing and determination by the Civil Rights Commission. The commission subsequently found the defendant's policies restricting pool use and designating certain buildings at the complex for the use of families with children to violate the age discrimination provisions of the civil rights act and ordered the defendant to cease such practices, to pay damages and attorney fees to the affected tenant-complainants, and to refrain from enacting similar rules on the basis of age. After settlement of the other issues, the Oakland Circuit Court, Francis X. O'Brien, J., after a trial de novo, addressed the sole remaining issue as stipulated by the parties and found that restriction of families with children to certain designated buildings was not unlawful per se, and dissolved the commission's order and dismissed the proceedings. The Court of Appeals, Bronson, P.J., and Sanborn, J. (MacKenzie, J., dissenting), affirmed in an opinion per curiam (Docket No. 62753). The plaintiff appeals.

In an opinion by Justice Boyle, joined by Chief Justice Williams and Justices Kavanagh, Levin, Brickley, and Cavanagh, the Supreme Court held:

Restricting families with children to certain designated buildings in a multi-apartment complex is not unlawful per se.

1. The civil rights act does not prohibit differential treatment of minors per se or of persons with whom the minors reside

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16 Am Jur 2d, Constitutional Law § 770.

49 Am Jur 2d, Landlord and Tenant § 1041.

Refusal to rent residential premises to persons with children as unlawful discrimination. 30 ALR4th 1187.

where such treatment is reasonably necessitated by the special nature and characteristics of children. The prohibition in the civil rights act against discrimination in real estate transactions does not require identical treatment of children and adults in every situation. Rather, the act was intended to apply a practical rule of reason to such age discrimination.

2. Where differences between children and adults are relevant and the special nature and characteristics of children reasonably require special rules, differential treatment is not prohibited. The same practical rule applies to persons with whom children reside. What might otherwise be unlawful age discrimination is permitted by law where it represents a reasonable method of accommodating other common-law, statutory, or constitutional duties.

Affirmed.

Justice Ryan, dissenting, stated that in this case leave to appeal was improvidently granted. No facts are presented, no case or controversy has been decided, no conflicting positions have been resolved, no rights and duties have been declared, and no allegations or defenses are held to be established or proved.

125 Mich App 500; 336 NW2d 494 (1983) affirmed.

OPINION OF THE COURT

1. CIVIL RIGHTS — LANDLORD AND TENANT — AGE DISCRIMINATION.

Restriction of families with children to occupancy of certain designated buildings in a multi-apartment complex is not unlawful per se where the restriction is reasonably necessitated by the special nature and characteristics of the children (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.).*

2. CIVIL RIGHTS — LANDLORD AND TENANT — AGE DISCRIMINATION.

The prohibition in the civil rights act against age discrimination in real estate transactions does not require identical treatment of children and adults in every situation; rather, a practical rule of reason is to be applied to determine whether differences between children and adults are relevant and the special nature and characteristics of the children reasonably require special treatment (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Felix E. League* and *Howard E. Goldberg,* Assistant Attorneys General, for the plaintiff.

*Evans & Luptak* (by *Gordon S. Gold)* for the defendant.

Amici Curiae:

*Edward M. Wise* for American Civil Liberties Union Fund of Michigan.

*Irvin H. Yackness* for Apartment Owners Association of Michigan.

*John A. Obee* for Fair Housing Center.

*Victoria C. Heldman* and *Corrie Cook King* for Women Lawyers Association of Michigan.

BOYLE, J. This action arises under the Michigan civil rights act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* and focuses upon the policies and practices of the private owners of an apartment complex as they relate to and affect the civil rights of families with children. The issue we must resolve in this appeal is whether the owner of a multi-building apartment complex may lawfully restrict families with children to certain designated areas.

I

FACTS AND PROCEDURAL BACKGROUND

The Beznos Corporation is a privately held Michigan corporation which owns and operates a 928-unit apartment complex known as "Muirwood Apartments" in Farmington Hills, Michigan.

Proceedings in this matter were initiated in the summer of 1978 by the Michigan Department of Civil Rights in response to the complaints of three

families residing at Muirwood Apartments.[1] The residents filed complaints with the department alleging that their children had been denied access to the swimming pool, and two of the families complained that eviction proceedings had been commenced against them because they had taken their children to the pool in violation of the landlord's policy. The department filed a complaint in the Oakland Circuit Court, as provided by MCL 37.2603; MSA 3.548(603), to enjoin the eviction proceedings as well as enforcement of the rule prohibiting the children's use of the pool facilities.

Following a hearing on August 11, 1978, the Oakland Circuit Court issued a temporary injunction halting the eviction proceedings and modifying the pool rule to permit use by children of age four or older, pending a complete investigation by the department and a full hearing and determination by the Michigan Civil Rights Commission.

The department proceeded to conduct an investigation of defendant corporation, and filed a "charge" against it with the commission on May 21, 1979, alleging in pertinent part that defendant's practice of setting aside certain designated buildings for families with children, and restricting use of the pool facilities violated the age discrimination provisions of the Michigan civil rights act, MCL 37.2502 *et seq.;* MSA 3.548(502) *et seq.*

After various administrative proceedings,[2] on February 26, 1980, the commission issued an opin-

---

[1] The complaint of a fourth family residing at another complex owned and operated by the defendant was dismissed by stipulation of the parties prior to administrative proceedings herein. See fn 2.

[2] An administrative hearing was conducted on June 8, 19, 20, 22, and July 11, 1979 before a hearing referee of the Michigan Civil Rights Commission, who took testimony of various witnesses and other evidence related to Muirwood Apartments. The referee issued an opinion which included proposed findings of fact and recommendations on November 6, 1979. After defendant filed objections to the

ion finding defendant's policies restricting children's use of the pool facilities and designating certain buildings for families with children violative of the age discrimination provisions of the civil rights act. Defendant was ordered to give up those policies and practices at Muirwood Apartments and all other rental complexes it operated and to pay damages and attorney fees to the individual complainants. The order also imposed detailed reporting requirements upon defendant for a period of two years and forbade enactment or enforcement of any rule, regulation, designation, or restriction based upon age.

The Beznos Corporation then filed a timely appeal in the Oakland Circuit Court pursuant to its rights under MCL 37.2606; MSA 3.548(606). Prior to trial, the circuit judge ordered submission of the issue of damages awarded to the individual claimants by the commission to a mediation panel, whose recommendation was accepted by all parties. Plaintiff and defendant also agreed upon a swimming pool rule that was not based upon age. Therefore, both parties agreed, and stipulated, that the only issue remaining for determination by the circuit court was:

"May the owner of a multi-building apartment complex lawfully restrict families with children to certain designated buildings?"

After a trial *de novo* on November 25, 1981, the Honorable Francis X. O'Brien of the Oakland Circuit Court, noting that he was restricting himself to the issue presented, held that:

"The restriction—or restricting of families with children to certain designated buildings within a multi-

opinion of the referee, the matter was heard by the Michigan Civil Rights Commission on December 18, 1979.

building complex, in this Court's opinion, is not per se
unlawful under the [Michigan] Civil Rights Act.

"It's the Court's opinion that the legislative intent is
to apply a practical, rational reasoning. However, on
the facts of a given case, the reasons for the restriction
and the manner of application may violate the Stat-
ute."

"The Court's ruling in the first instance with regards
to not being per se violative, is if the action is taken by
the landlord in the interest of the comfort and safety of
all of the tenants."

Pursuant to its holding, in an order entered
February 11, 1982, the circuit court dissolved the
order of the Michigan Civil Rights Commission
and dismissed proceedings against defendant by
the Michigan Department of Civil Rights.

The department filed a timely claim of appeal,
and on May 4, 1983, the Court of Appeals, in a 2-1
decision, affirmed the decision of the circuit court.
125 Mich App 500; 336 NW2d 494 (1983). The
majority concluded that because the statute did
not by clear terms prohibit disparate treatment of
families with children, it could not imply a legisla-
tive intent to do so. *Id.,* p 503. The dissenting judge
disagreed, arguing that the statutory inclusion of
"age" as a category, precluded any ambiguity or
search for legislative intent, and provided a suffi-
ciently clear basis for proscribing defendant's prac-
tices in this case. *Id.,* pp 506-510 (MACKENZIE, J.,
*dissenting).*

On February 28, 1984, this Court granted the
department's application for leave to appeal. 418
Mich 949 (1984).

II

ANALYSIS OF THE TRIAL COURT AND
COURT OF APPEALS OPINIONS

We think Judge O'Brien's narrow decision on

the question before him was correct, but granted leave because we do not subscribe to the analysis of the issue by the Court of Appeals, and believe that further guidance from this Court is required.

It is important to note at the outset the precise contours of the trial court's holding. In answering the stipulated question the trial court ruled that

"[t]he restriction—or restricting of families with children to certain designated buildings within a multi-building complex . . . is not *per se* unlawful under the [Michigan] Civil Rights Act."

The court did *not* hold that such designation could *never* be violative of the act, or even that the designations of defendant at Muirwood Apartments could not be found to be a violation of the act. It merely held, in answer to the question presented by the parties, that the designation itself does not necessarily constitute a violation of the statute per se.

In fact, after answering the question presented, Judge O'Brien went on to explain that "on the facts of a given case, the reasons for the restriction and the manner of application may violate the Statute."

In affirming the trial court decision, the Court of Appeals analyzed the statute in question, and distinguished discrimination on the basis of chronological age from disparate treatment of families with children. See 125 Mich App 503. The Court of Appeals refused to imply legislative intent to prohibit discriminatory treatment of families with children in the absence of clear language to that specific question. *Id.,* p 505. Thus, in affirming the decision of the trial court, the Court of Appeals issued a much broader ruling than the trial court issued or even had before it. Indeed, the Court of

Appeals ruling could be used to support the proposition that the discriminatory treatment of families with children could *never* be a violation of the statute in question. We do not agree, but find it unnecessary in the context that this case is presented to address such considerations. Our review is restricted to the issue as stipulated by the parties:

"May the owner of a multi-building apartment complex lawfully restrict families with children to certain designated buildings?"

As Justice LEVIN has so aptly observed: "Often the answer to a question is determined by the way it is asked." *Smith v E R Squibb & Sons,* 405 Mich 79, 98; 273 NW2d 476 (1979) (LEVIN, J., *dissenting).* The stipulated question presupposes, of course, that defendant does in fact restrict families with children to certain designated buildings within its multi-unit apartment complex and that such restrictions do not constitute complete exclusion.[3] However, it does not raise questions as to the number or proportion of units so designated, or of the need for family housing within the general geographic area. Therefore, the circuit court did not consider evidence or make findings on these matters, as they would have been irrelevant to answering the question presented. Our review on appeal is of the circuit court decision, not that of the commission, under the "clearly erroneous" standard of GCR 1963, 517.1. See *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368, 372-373; 263 NW2d 376 (1977). Thus, the commission cannot now ask us to go beyond the issue it agreed to

---

[3] *Cf. Marina Point Ltd v Wolfson,* 30 Cal 3d 721; 180 Cal Rptr 496; 640 P2d 115 (1982); *O'Conner v Village Green Owners Ass'n,* 33 Cal 3d 790; 191 Cal Rptr 320; 662 P2d 427 (1983) (involving complete exclusions).

in the lower court and to review its evidence and findings to determine whether defendant's particular practices may be violative of the statutes in question. In the context that this case is presented to us, we cannot now decide what designations or restrictions of families with children may be permissible, but only whether *any* such restrictions and designations may *ever* be permissible. Furthermore, if our answer to the latter question is in the affirmative, our inquiry in this case must end, for we will have answered the question presented.

## III

### STATUTORY ANALYSIS

The pertinent section of the statute in question, MCL 37.2502; MSA 3.548(502) prohibits both refusing "to engage in a real estate transaction," MCL 37.2502(1)(a); MSA 3.548(502)(1)(a), and discrimination "in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith," MCL 37.2502(1)(b); MSA 3.548(502)(1)(b), whenever such practices are based on the "religion, race, color, national origin, age, sex, or marital status of a person or a person residing with that person." MCL 37.2502(1); MSA 3.548(502)(1).

Refusing to rent to a protected class of prospective tenants is proscribed by subsection (a). It constitutes refusal "to engage in a real estate transaction." See *Shaw v Cassar,* 558 F Supp 303 (ED Mich, 1983). Restricting a protected class of tenants to particular apartments violates both subsections (a) and (b). It not only constitutes discrimination "in the terms, conditions, or privileges of a real estate transaction," it also amounts to a refusal "to engage in a real estate transac-

tion" with respect to those apartments from which members of the protected class are excluded. See *United States v Mitchell,* 580 F2d 789 (CA 5, 1978). We agree with the amicus curiae, the American Civil Liberties Union Fund of Michigan, that if a landlord were to restrict persons of a particular religion or race to particular buildings, there would be absolutely no doubt that members of these protected classes, who had been told they could only rent in a particular building reserved for persons of their "sort," would be entitled to complain about refusal to rent other available apartments as discrimination "in the terms, conditions or privileges of a real estate transaction." MCL 37.2502(1)(b); MSA 3.548(502)(1)(b). The Michigan civil rights act also proscribes housing discrimination when based on the religion, race, color, national origin, age, sex, or marital status of a person or *a person residing with that person.* MCL 37.2502(1); MSA 3.548(502)(1) (emphasis added). Again, we agree that it would clearly violate the statute to refuse to rent to a prospective tenant living with other persons of a particular religion or race, or to segregate tenants living with other persons of a particular religion or race. *Id.* See also 1976 Journal of the House 1322.

We do not agree, however, that the position is necessarily the same where a landlord segregates tenants on the basis of the age of a child living with a parent or guardian. Although we do not dispute that minors are within the protection of the act, we do not agree that the act requires identical treatment of children and adults in every situation.

A "literal application of the [statutory] prohibition against age discrimination would outlaw many regulations, rules, laws and policies designed

to protect children."[4] It would, for instance, require landlords to rent apartments to minor children. Such a requirement would overrule the long-established rule that minors lack the legal capacity to contract. Moreover, it would drastically alter the norms relating to the role and functions of children in our society. It defies reason that the Legislature would so radically alter traditional practice and law without extensive study and debate. Yet, the legislative history of the civil rights bill contains no reference to such a requirement, let alone any debate on the merits or desirability of such a rule. Given this, we do not believe that the Legislature intended such a result.

We believe that the Legislature intended to apply a practical rule of reason to the prohibition of discrimination on the basis of age. As we have often stated, construction of a statute in a way that would produce absurd and undesirable results should be avoided. See, *e.g., Salas v Clements,* 399 Mich 103; 247 NW2d 889 (1976). It has been said that "[i]n prohibiting age discrimination, the act contemplates only that 'similarly situated people' be treated equally," *Cheeseman v American Multi-Cinema, Inc,* 108 Mich App 428, 440; 310 NW2d 408 (1981), *lv den* 413 Mich 890 (1982). There are circumstances in which children and adults are not "similarly situated"—as in their mental and emotional capacity to assume the obligations and responsibilities involved in contracts—and here the act does not prohibit distinctions based on age.

---

[4] *Cheeseman v American Multi-Cinema, Inc,* 108 Mich App 428, 433; 310 NW2d 408 (1981), interpreted the age discrimination prohibitions in the context of the public accommodations provisions of the act. MCL 37.2301(a); MSA 3.548(301)(a). Although the public accommodations provisions contain an express exemption limiting protections where the prohibited acts are "otherwise permitted by law," we do not think the Legislature intended the housing provisions to be interpreted irrationally merely because they did not include such an express exemption.

As we have pointed out, "[s]pecial rules for children are not unusual," *Moning v Alfono,* 400 Mich 425, 445; 254 NW2d 759 (1977). This fact is the result of the inescapable reality that children are, in many respects, different from adults. Where such differences are relevant, and the special nature and characteristics of children reasonably require such "special rules," the act does not prohibit them. Thus, the civil rights act does not prohibit differential treatment of minors per se where such treatment is reasonably necessitated by the special nature and characteristics of children.

Clearly, then, the requirement that one "engaging in a real estate transaction" not discriminate based on the "age . . . of a person" does not require landlords to enter into rental contracts with children, due to their mental and legal incapacities. Had the Legislature intended a more stringent and absolute prohibition to apply with respect to "a person residing with that person" than applies to the contracting party itself, it surely would have made this intention manifest. Yet this section of the act contains no indication whatsoever that a more stringent rule should apply here. Indeed, where the main party protected by the section—the contracting party—is subject to reasonably necessary differential treatment on the basis of age, it is unlikely that the Legislature would intend a more absolute and stringent prohibition to apply with respect to "a person residing with that person." We therefore conclude that the Legislature intended the same practical rule of reason to apply with respect to "person[s] residing with," as to the contracting "person[s]" themselves. Thus, this section of the act does not prohibit per se, in real estate transactions, differential treatment of persons reasonably necessitated by

the special nature and characteristics of children
residing with such persons.

## IV

### CONCLUSION

In concluding, we express again our agreement
with the trial court's finding that the Legislature
intended "to apply a practical rational reasoning"
to the interpretation of the age discrimination
provisions of article 5 of the Michigan civil rights
act.

Such reasoning recognizes that children and
adults are not the same for all purposes and that
what might otherwise be unlawful age discrimina-
tion is permitted by law where it represents a
reasonable method of accommodating other com-
mon-law, statutory, or constitutional duties[5] with
the rights of families with children to nondiscrimi-
natory treatment in access to rental housing.
Therefore, we hold that the conclusion of the
circuit court that "restricting of families with
children to certain designated buildings within a
multi-building complex . . . is not per se unlawful"
is not clearly erroneous.

The decision of the Court of Appeals is affirmed.
No costs, as the determination of a public question
is involved.

---

[5] See, *e.g., Cheeseman, supra,* and cases cited therein; *Moning v
Alfono, supra,* and cases cited therein discussing special duties owed
children in the context of the attractive nuisance doctrine, negligent
entrustment, and sale of potentially dangerous instrumentalities;
*Quinliven v Great Atlantic & Pacific Tea Co,* 395 Mich 244, 267; 235
NW2d 732 (1975), *Kreiner v Yezdbick,* 22 Mich App 581; 177 NW2d
629 (1970), and *Butler v Watson,* 193 Mich 322, 329; 159 NW 507
(1916), discussing duties of landlords to those on their property. See,
also, *Home Life Ins Co v Breslerman,* 168 Misc 117; 5 NYS2d 272
(1938), discussing duties of landlord to residential tenants who disturb
each other.

WILLIAMS, C.J., and KAVANAGH, LEVIN, BRICK-
LEY, and CAVANAGH, JJ., concurred with BOYLE, J.

RYAN, J. *(dissenting).* I decline to join the
Court's opinion because it decides nothing. Having
agreed to answer an abstract question having no
factual component, the Court has rendered noth-
ing more than an advisory opinion.

This was once a lawsuit about families with
children being restricted to designated areas of the
defendant's apartment complex and the children
of such families being forbidden to use the swim-
ming pool in the complex. After a hearing on a
petition for a temporary injunction, issuance of a
temporary injunction, a complete investigation by
the Michigan Civil Rights Commission prior to
trial, submission to a mediation panel of the issue
of damages awarded to the individual claimants by
the Civil Rights Commission, settlement discus-
sions, and agreement upon a new swimming pool
rule, there was finally submitted to the circuit
court on the day of trial the following question:
"May the owner of a multi-building apartment
complex lawfully restrict families with children to
certain designated buildings?"

Apparently the question was submitted to the
trial court on the stipulation of the parties but, as
the question reveals, it is entirely without refer-
ence to any facts. The trial court's answer to the
question was, in effect, "maybe." That court de-
clared:

"However, *on the facts of a given case,* the reasons
for the restriction and the manner of application may
violate the statute.

"The Court's ruling in the first instance with regards
to it not being per se violative, is if the action is taken
by the landlord in the interest of the comfort and safety
of all the tenants."

Plainly, the abstract question put to the court was not answered categorically. The court's answer, understandably, was couched in the cautionary language with which all lawyers are familiar: it depends upon the facts.

My colleagues have now undertaken to answer the same question, again devoid of any factual underpinnings, by giving the same answer—it depends.

Of course it depends. As in the case of any lawsuit, it depends upon the facts of the lawsuit. Since this lawsuit is not presented to us as having any facts, no case or controversy has been decided, no conflicting positions resolved, no rights and duties declared, and, more importantly, no allegations or defenses are held to be established or proved.

This Court is not authorized to give abstract advisory opinions except under the provisions of Const 1963, art 3, § 8, and the certified question procedure of GCR 1963, 797. Neither of those provisions have been invoked in this case, nor are they applicable.

Leave to appeal was improvidently granted in this case. I would enter an order to that effect.