# STATE OF MICHIGAN

# COURT OF APPEALS

---

DEPARTMENT OF CIVIL RIGHTS *ex rel*
BARBARA SMITH,

        Claimant-Appellant,

v

COUNTRYSIDE TOWNHOUSES,

        Respondent-Appellee.

UNPUBLISHED
October 11, 2016

No. 327176
Oakland Circuit Court
LC No. 2014-140389-AA

---

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Claimant, Michigan Department of Civil Rights (the Department) *ex rel* Barbara Smith, appeals by leave granted[1] the circuit court's opinion and order dismissing its age-discrimination claim against respondent Countryside Townhouses. Because we conclude that Countryside's two-adults-only-per-unit occupancy policy does not violate the Elliott-Larsen Civil Rights Act, MCL 37.2501 *et seq.*, we affirm.

## I. BASIC FACTS

Countryside is an apartment complex in Auburn Hills, Michigan that offers moderate-income subsidized housing through a program overseen by the Michigan State Housing Development Authority. For at least 25 years, Countryside has had a maximum occupancy policy of two adults per unit.[2] According to Countryside, the policy is meant to address parking congestion, to ensure residential tranquility and stability, and to minimize damage to rental units.

---

[1] *Dep't of Civil Rights v Countryside Townhouses*, unpublished order of the Court of Appeals, entered November 18, 2015 (Docket No. 327176).

[2] Countryside has waived the two-adults-only policy when a minor child already living in an apartment unit turns 18 years old and continues to live with two other adults in a single unit. Additionally, the policy could also be waived if an accommodation was requested on the basis of a disability. There is no evidence in the record of such an accommodation ever being requested or granted.

In 2009, Smith called Countryside to inquire about renting a two-bedroom unit for herself and her two adult daughters. Smith was told that she could not rent a single unit for herself and her adult daughters because of the two-adults-only-per-unit policy. She could, however, rent multiple units for herself and her daughters. Smith believed that Countryside's refusal to rent a single unit constituted illegal discrimination based on age and disability, and she filed a complaint with the Department of Civil Rights. Pertinent to this appeal, the Department issued a charge of age discrimination.[3]

Following a hearing before an administrative law judge (ALJ), the ALJ determined that Countryside did not violate the Civil Rights Act. The ALJ opined that Smith "was not treated differently than any other adult on the basis of her age. Whether she was older or younger, her application still would have been denied as the occupancy policy applies equally to all adults, regardless of their age." Thus, the ALJ recommended that no damages or other remedy be awarded, but opined that if the Civil Rights Commission (the Commission) disagreed and concluded that Countryside violated the Civil Rights Act, Smith should be awarded $65,000 in noneconomic damages.

Both the Department of Civil Rights and Countryside filed exceptions to the ALJ's recommendation. The Commission rejected the ALJ's recommendation regarding the age-discrimination claim, concluding that the two-adults-only-per-unit rental policy violates the Civil Rights Act and Title VII of the Civil Rights Act of 1964 by discriminating against Smith on the basis of her age or the age of the persons residing with her. The Commission stated that the issue was an issue of first impression in Michigan. The Commission also opined that the two-adults-only-per-unit policy is facially discriminatory and constitutes direct evidence of discrimination. The Commission stated:

> The mere fact that this occupancy policy applies to all adults equally does not negate the fact that it discriminates on the basis of age. The same would be true of a policy which discriminates against women, for example. The fact that it discriminates against all women equally does not render the underlying policy non-discriminatory.

The Commission further stated that the policy does not address legitimate concerns related to the number of parking spaces because Countryside could simply limit the number of parking spaces per unit and that regardless the parking congestion problems would normally arise when a resident reaches the age of 16 rather than 18. The Commission also rejected the "residential tranquility and stability" rationale, stating that Countryside "failed to present any evidence which would suggest that these behaviors are natural characteristics of adults or adulthood." Finally, regarding the issue of wear and tear to an apartment unit, the Commission opined that the issue could be addressed through rental rate adjustments or the withholding of a security deposit. The Commission stated that apartment complexes may adopt occupancy standards, but that the

---

[3] The Department also asserted that Countryside had issued discriminatory housing advertisements and that it had engaged in discrimination on the basis of disability. Those claims were resolved below and have not been renewed on appeal.

standards cannot be based on age or any other protected category. The Commission continued, "[f]or instance, it may be permissible for an apartment complex to limit occupancy based on the number of persons per bedroom or the square footage of the unit or sleeping areas." Finally, the Commission determined that Smith was entitled to nominal damages in the amount of $5,000.

Countryside appealed to the Oakland Circuit Court, which reversed the Commission. The court noted that age discrimination in the employment context involves treating persons differently based on their chronological ages and stereotypes about older or younger adults. The court also noted that the term "age" in the Civil Rights Act refers to "chronological age." The court opined that Countryside's policy applies equally to adults of every chronological age and therefore treats all similarly situated persons the same. Relying on *Dep't of Civil Rights v Beznos Corp*, 421 Mich 110; 365 NW2d 82 (1984), the court further opined that the Civil Rights Act does not per se prohibit differential treatment of minors. The court concluded that was no evidence, either direct or indirect, of disparate treatment and that the Department did not show that Countryside's proffered reasons for the occupancy policy were pretextual. Thereafter, the trial court denied the Department's motion for reconsideration.

## II. AGE DISCRIMINATION

### A. STANDARD OF REVIEW

The Department of Civil Rights argues that the circuit court erred in dismissing the age-discrimination claim. The circuit court reviews de novo a decision by the Civil Rights Commission. *Dep't of Civil Rights ex rel Johnson v Silver Dollar Cafe (On Remand)*, 198 Mich App 547, 548; 499 NW2d 409 (1993). Our review of the circuit court's decision is for clear error. *Id*. at 549. "[W]e can substitute our judgment for the circuit court's where, on review of the whole record, we are left with the definite and firm conviction that a mistake has been made." *Id*. We also review de novo whether the circuit court properly interpreted and applied the statute at issue. *In re Estate of Peterson*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 326017); slip op at 3.

### B. ANALYSIS

MCL 37.2505(1) of the Civil Rights Act provides, in relevant part, as follows:

> A condition, restriction, or prohibition . . . that directly or indirectly limits the use or occupancy of real property on the basis of . . . age . . . is void, except a limitation of use as provided in section 503(1)(c) [pertaining to senior citizens or persons 50 years of age or older] or on the basis of religion relating to real property held by a religious institution or organization, or by a religious or charitable organization operated, supervised, or controlled by a religious institution or organization, and used for religious or charitable purposes.

Thus, the Act explicitly precludes age discrimination in rental housing based on factors unrelated to senior citizen housing or property held by religious groups. The Department of Civil Rights argues that Countryside's two-adults-only-per-unit policy is facially discriminatory and constitutes direct evidence of discrimination. "Direct evidence" of discrimination is "evidence which, if believed, requires the conclusion that that unlawful discrimination was at least a

motivating factor[.]" *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001) (citation omitted). "For example, racial slurs by a decision maker constitute direct evidence of racial discrimination . . . ." *Harrison v Olde Fin Corp*, 225 Mich App 601, 610; 572 NW2d 679 (1997). The plaintiff bears the burden of proving that the defendant acted with illegal discriminatory animus and that the discriminatory animus was causally related to the defendant's action. *Id*. at 612-613.

Here, the prohibition on more than two adults in a unit is not dependent on the actual chronological age of a prospective adult renter and his or her prospective adult roommates. In other words, Smith and her daughters could have been *any age over 18* and they would not have been denied on the basis that they were too old or too young to rent a unit. In that regard, as a group of three adults seeking to rent a single unit together, Smith and her daughters were treated exactly the same as every other group of three adults that may have attempted to rent a single unit. Nevertheless the policy does make distinctions on the basis of age insofar as it permits an adult to rent a single unit with two minor children whereas it prohibits an adult to rent a single unit with two adult children. In that regard, the policy facially discriminates on the basis of whether the prospective renters are over or under the age of 18.

The Department of Civil Rights asserts that the Civil Rights Act prohibits all housing practices that directly or indirectly limit occupancy based on the age of a renter or the persons living with the renter. That is not the case. In *Beznos*, 421 Mich 119, our Supreme Court recognized that some distinctions based on age are permissible. The issue presented in that case was whether an apartment complex could lawfully restrict families with children to designated buildings. *Id*. at 117. The Court recognized that the Civil Rights Act prohibits the refusal to engage in a real estate transaction and discrimination in the terms, conditions, or privileges of a real estate transaction based on age. *Id*. at 118. The Court opined that while restricting persons of a certain race or religion to particular buildings would constitute a violation of the Civil Rights Act, the same is not necessarily true "where a landlord segregates tenants on the basis of the age of a child living with a parent or guardian." *Id*. at 119. The Court stated, "[a]lthough we do not dispute that minors are within the protection of the act, we do not agree that the act requires identical treatment of children and adults in every situation." *Id*. The Court noted that a literal application of the Civil Rights Act would outlaw many regulations and policies designed to protect children. *Id*. at 119-120. The Court continued:

> It would, for instance, require landlords to rent apartments to minor children. Such a requirement would overrule the long-established rule that minors lack the legal capacity to contract. Moreover, it would drastically alter the norms relating to the role and functions of children in our society. It defies reason that the Legislature would so radically alter traditional practice and law without extensive study and debate. Yet, the legislative history of the civil rights bill contains no reference to such a requirement, let alone any debate on the merits or desirability of such a rule. Given this, we do not believe that the Legislature intended such a result.
>
> We believe that the Legislature intended to apply a practical rule of reason to the prohibition of discrimination on the basis of age. . . . It has been said that "[i]n prohibiting age discrimination, the act contemplates only that 'similarly

situated people' be treated equally," *Cheeseman v American Multi-Cinema Inc*, 108 Mich App 428, 440; 310 NW2d 408 (1981), *lv den* 413 Mich 890 (1982). There are circumstances in which children and adults are not "similarly situated"—as in their mental and emotional capacity to assume the obligations and responsibilities involved in contracts—and here the act does not prohibit distinctions based on age. As we have pointed out, "[s]pecial rules for children are not unusual," *Moning v Alfono*, 400 Mich 425, 445; 254 NW2d 759 (1977). This fact is the result of the inescapable reality that children are, in many respects, different from adults. Where such differences are relevant, and the special nature and characteristics of children reasonably require such "special rules," the act does not prohibit them. Thus, the civil rights act does not prohibit differential treatment of minors per se where such treatment is reasonably necessitated by the special nature and characteristics of children. [*Id*. at 120-121.][4]

Thus, it is plain that the Civil Rights Act's prohibition of age discrimination only requires that *similarly situated* people be treated equally and that adults and minors are not always similarly situated. *Id*.

As a general rule, children and adults are not similarly situated with respect to the need to live with their parents. For instance, "[p]arents of a minor child have a well-recognized obligation to support that child." *Diez v Davey*, 307 Mich App 366, 376; 861 NW2d 323 (2014), citing MCL 722.3. Further, the Civil Rights Acts prohibits housing discrimination on the basis of familial status, MCL 37.2102; MCL 37.2502(1), which is dependent on the presence of a minor child.[5] Likewise, minors lack the capacity to contract and thus cannot rent an apartment on their own. *Beznos*, 421 Mich at 120. In contrast, parents generally have no legal obligation to support their adult children, familial status is not implicated by a parent living with an adult child, and a parent's adult child can legally rent his or her own apartment. As such, it is clear that adults and children are not always similarly situated. Accordingly, the Department's argument that Countryside's policy facially establishes the existence of *unlawful* discrimination lacks merit because the distinction made by the policy is permissible based on the differences between adults and minors in the context of housing.

In addition, the Department of Civil Rights identifies no evidence that the adoption of the two-adults-only-per-unit policy was motivated by a predisposition to discriminate against persons over the age of 18 years. Countryside explained that its occupancy policy was meant to address parking congestion, to ensure residential tranquility and stability, and to minimize damage to rental units. The Commission opined that these concerns could be addressed in other ways. However, the fact that Countryside could have made a different decision regarding how to

---

[4] The Department of Civil Rights questions the analysis in *Beznos*, but this Court is bound by a decision of our Supreme Court until it is overruled or modified by our Supreme Court. *State Treasurer v Sprague*, 284 Mich App 235, 242; 772 NW2d 452 (2009).

[5] " 'Familial status' means 1 or more individuals under the age of 18 residing with a parent or other person having custody . . . ." MCL 37.2103(e).

address its concerns does not establish that Countryside's adoption of the two-adults-only-per-unit occupancy policy was motivated by discriminatory animus. Whether a defendant's business judgment is wise, shrewd, prudent, or competent is not pertinent in determining whether discriminatory animus motivated the defendant. *Hazle*, 464 Mich at 476 (citation omitted).[6]

On these facts, the circuit court did not err in dismissing the Department of Civil Rights' age-discrimination claim against Countryside.

Affirmed.

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[6] It is also worth noting that there were "market ready" units available that would have allowed Smith to rent a single unit for her and her two adult daughters. Further, there is no allegation in this case that, because of her age or the ages of her daughters, she was unable to rent any units from Countryside. Instead, she could have rented multiple units. Thus, Countryside did not refuse to rent to Smith and her daughters; it just prohibited them from all staying in the same unit.